[No. 29371. *En Banc.* March 21, 1946.]

THE STATE OF WASHINGTON, *on the Relation of John S. Ayamo, Plaintiff,* v. THE BOARD OF GOVERNORS OF THE STATE BAR ASSOCIATION, *Respondent.*[1]

*Frank Harrington,* for appellant.

*S. H. Kelleran,* for board of governors.

MALLERY, J.—Relator, on April 1, 1943, filed an application for admission to practice law in this state upon accredited certificate. The board of governors of the state bar association denied the application and also a subsequent request for a reconsideration. Relator, on May 10, 1944, petitioned this court for a writ of certiorari. A writ and order were issued directing the respondent, board of governors, to return to this court a complete record of its proceedings in connection with the application. The matter came up for hearing before this court, sitting *En Banc,* on

[1]Reported in 167 P. (2d) 674.

November 8, 1944, pursuant to which, on November 20, 1944, it was ordered that the matter be returned to the respondent, with instructions to grant relator a rehearing.

A rehearing was held on January 11, 1945, attended by the relator, counsel for both sides, and a court reporter. The record, together with findings of fact and conclusions of law, was considered by the entire board of governors at a subsequent meeting, and the relator was again denied the right to practice law in this state. It is this denial which is before us for review.

The relator was admitted to practice law in Indiana in 1922. He practiced law continuously there until coming to the state of Washington in 1933. He applied for admission to practice law in this state on January 8, 1934. His application was rejected in the summer of 1935, on the ground that the relator was not then a citizen of the United States. Included in the notice of rejection was the information that, when the relator's declaration of intention to become a citizen had become final, he might again make application for admission to the bar. Relator, who is a Filipino by birth, has an honorable discharge from the United States navy, which entitled him to become a citizen of the United States. Citizenship was conferred upon him on December 13, 1937.

On April 1, 1943, relator made the instant application for admission to practice law in this state. In denying the relator's request for admission, the respondent states in paragraph two of its conclusions of law:

"That the applicant has during the period of his residence in the state of Washington from 1932 to 1944 been guilty of unethical conduct in that he fraudulently and unlawfully represented himself to the public as a legal advisor and as a lawyer authorized and admitted to practice his profession in the state of Washington."

The relator testified that, about sixty days after his arrival in Seattle, he became connected with the American Federation Organization movement and became the business agent of the Cannery Workers' Union, occupying union offices in the Union Hall on Sixth avenue. Shortly there-

after, he moved to the union administration office in the Smith Tower Annex where his name was placed upon the door together with the description, "Business Agent and Legal Advisor for the Cannery Board." The relator was unable to remember the exact wording. A year or so later, in 1935, the offices were moved to Fifth and Washington, their present location. Relator occupied the position of secretary of the union at this location until 1939 and, in such a capacity, was not entitled to have his name upon the door. He further testified, however, that, having been elected commander of the Rizal post No. 142 of the American Legion, he began occupation, in 1940, of their office at 210 Fourth avenue south, and that, for a period of about two years, he used that office for his activities as labor agent for the Great Northern Railroad and had his name on the door together with the words, "Filipino Labor Supply."

The relator terminated his relationship with the railroad in 1942 and forthwith became business agent for the Filipino Farmers' Association, continuing to occupy the office at 210 Fourth avenue south. He then caused his name to be placed on the door, together with the description "Legal Advisor for the Filipino Farmers' Association," which description was stricken about six months later, upon advice of counsel.

The office at 210 Fourth avenue south was a converted store, and the door thereto faced the street. The relator kept his law books in his office, and, except for the period of time when he was representing the railroad, he gave and purported to give legal advice to various persons. His method was to consult with such persons and to advise them as to their rights and, if court action was deemed necessary, to then refer them to legally admitted attorneys for such action as might be advisable.

The rehearing was also concerned with the relator's activities, undertaken at the request of the resident commissioner of the Philippines to the United States, in connection with certain alien land law violations in the Yakima valley in 1936. In that year there was a condition

of unrest among the valley farmers, which resulted from the practice of certain white persons in obtaining leases of Indian reservation land and then subleasing them to Filipino and Japanese aliens.

The relator was confronted with a letter from the special alien investigator for the state of Washington which stated, among other things, that, while in Yakima, Mr. Ayamo called upon the chief deputy prosecuting attorney and presented him with a business card which stated: "John Ayamo, Attorney at Law, Suite (no. unknown), Smith Tower, Seattle, Washington."

Upon examination concerning this incident, the relator testified as follows:

"Q. You had some cards printed at one time? A. I think it was when I first came, yes. When I arrived here,—I had cards in 1934. I still had my cards from the east as a lawyer. Q. Your card said on it 'Attorney?' A. Yes. I still have my stationery from East Chicago, Indiana. Q. Didn't you have on those cards the Smith Tower address? A. I don't recall; I wouldn't state."

As to the inference the public drew from relator's activities, it appears that, following an interview with a reporter from the Yakima Morning Herald, the December 30, 1936, edition of that paper carried the following item on page one.

"COAST ATTORNEY BACKS FILIPINOS
"John S. Ayamo Blames Unscrupulous Whites for Trouble
"Unscrupulous white persons were blamed last night by *John S. Ayamo, Filipino attorney from Seattle,* for the conditions that brought recent action against Filipinos farming lands on the reservation." (Italics ours.)

■ The evidence that the relator practiced law without a license and held himself out to the public as an attorney qualified to do work of a legal nature, is sufficient to sustain the board's finding that the relator should be barred on ethical grounds.

Rem. Rev. Stat. (Sup.), § 138-14 [P. P. C. § 273-27], makes unauthorized practice of law a misdemeanor. The pertinent part of Rem. Rev. Stat., § 139-4 [P. P. C. § 273-35], provides that:

"No person shall be permitted to practice as an attorney or counselor at law or to do work of a legal nature for compensation, *or to represent himself as an attorney or counselor at law or qualified to do work of a legal nature,* unless he is a citizen of the United States and a bona fide resident of this state, and has been admitted to practice law in this state." (Italics ours.)

The facts as related constituted the practice of law and holding oneself out as an attorney under the statute. Its violation was unethical *per se.* See, also, *Ferris v. Snively,* 172 Wash. 167, 19 P. (2d) 942; 90 A. L. R. 278; *Paul v. Stanley,* 168 Wash. 371, 12 P. (2d) 401; 111 A. L. R. 19; 125 A. L. R. 1173; 151 A. L. R. 781; *State v. Perkins,* 138 Kan. 899, 28 P. (2d) 765; and *In re Matthews,* 57 Idaho 75, 62 P. (2d) 578, 111 A. L. R. 13.

The evidence supports the conclusion of the board of governors, and therefore its denial of relator's petition is affirmed.

DRIVER, C. J., BEALS, MILLARD, STEINERT, JEFFERS, ROBINSON, and SIMPSON, JJ., concur.

BLAKE, J., dissents.