[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 458.]

OFFICE OF DISCIPLINARY COUNSEL *v.* PAVLIK.

[Cite as *Disciplinary Counsel v. Pavlik*, 2000-Ohio-219.]

*Attorneys at law—Misconduct—Public reprimand—Engaging out-of-state attorney and failing to disclose attorney's limited authority in Ohio to clients.*

(No. 00-400—Submitted May 9, 2000—Decided August 16, 2000.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 99-45.

_____

{¶ 1} The parties stipulated to the following facts concerning the disciplinary complaint brought by relator against respondent, Thomas Pavlik of Cleveland, Ohio, Attorney Registration No. 0017305.

{¶ 2} In 1989, respondent was a member of the Cleveland law firm of Sindell, Rubenstein, Einbund, Pavlik, Novak & Celebrezze ("Sindell"). Respondent assisted clients with the restructuring of corporations and used business brokers to locate buyers and investors for Sindell's corporate clients. From 1989 to 1991, Sindell engaged Paul Misch to perform certain services for the firm's clients. At the time, Misch was an attorney admitted to the bar in Illinois and in the United States District Court for the Northern District of Ohio. Misch had significant expertise in corporate restructuring, and Sindell hired Misch to act as a business broker and financial consultant for certain clients. Of the attorneys at Sindell, respondent was the partner most responsible for supervising Misch. When Sindell entered into this arrangement with Misch, respondent knew that Misch was not admitted to the practice of law in Ohio.

{¶ 3} Respondent sometimes introduced Misch to Sindell clients without notifying those clients that Misch was not licensed to practice in Ohio. Misch was

also able to use Sindell's office and resources to conduct research, to communicate with clients over the telephone, and to meet personally with clients. On at least one occasion, Misch signed and transmitted a letter bearing the Sindell letterhead without indicating that he was sending it in a capacity other than as an attorney admitted to practice law in Ohio. The Sindell letterhead did not list the names of firm members or alert readers that Misch was not an attorney admitted to practice law in Ohio.

### The Better Meats, Inc. Matter

**{¶ 4}** In September 1990, respondent introduced Misch to the president of Better Meats, Inc., so that Misch could find a buyer for the business and assist in a refinancing sale. Respondent told the president that Misch was "working with" Sindell but did not say that Misch lacked a license to practice law in Ohio. In a letter to the president, respondent stated that Sindell would bill Better Meats the "same hourly rate for Misch as for partners" but did not state whether Misch was an attorney. Respondent was responsible for the preparation of all legal documents for Better Meats, but these documents were based on transactions and negotiations conducted by Misch. Sindell sent Better Meats a bill for its services in 1991, authorized by respondent. This statement listed Misch's work at the same billing rate as law firm partners, and listed Misch as federal court counsel.

### The Kasper Foundry Matter

**{¶ 5}** Respondent also introduced Misch to Elizabeth Reed and told Reed that Misch worked with Sindell. The purpose of this meeting was to determine whether Sindell could assist in the restructuring of Kasper Foundry Company. Respondent did not inform Reed that Misch had any limitations on his ability to practice law. Respondent worked on a proposed corporate restructuring of Kasper, and did not bill for Misch's services in the statements sent to Kasper. When respondent's restructuring failed to materialize, however, Misch ultimately arranged for the transfer of some Kasper Foundry assets to another entity,

Progressive Foundry. Respondent had no knowledge of this later transaction. Misch also represented Reed in personal matters, but did so without respondent's knowledge or authorization.

The Manfredi Motor Transit Company Matter

{¶ 6} Respondent referred Misch to another attorney, Joseph Weiss, who represented Manfredi Motor Transit Co. ("Manfredi") in an Ohio tax matter. Respondent did not represent Manfredi, nor did respondent supervise Misch with respect to any of Misch's work with Manfredi. Misch prepared filings and correspondence for Manfredi on the Sindell letterhead, prepared a supplemental notice of appeal, and met with various interested parties during the course of the Manfredi tax matter—all the while holding himself out as a Sindell attorney. Manfredi received billing statements on Sindell letterhead for work performed by Misch, but respondent did not know about or authorize these statements.

{¶ 7} The parties before this court agree that Misch took actions that could reasonably have led persons acting on behalf of Better Meats, Kasper Foundry, and Manfredi to believe that Misch was authorized to practice law in Ohio. In *Cleveland Bar Assn. v. Misch* (1998), 82 Ohio St.3d 256, 695 N.E.2d 244, this court held that Misch engaged in the unauthorized practice of law in these matters. The parties also agree that, to the extent that respondent authorized Misch to use Sindell resources, created or permitted to be created confusion in firm correspondence regarding Misch's status, and failed to inform Sindell clients that Misch was not an Ohio lawyer, respondent bears some of the responsibility for Misch's misconduct.

{¶ 8} Respondent acknowledges that Sindell provided Misch access to firm resources and that Misch subsequently misled Sindell clients and others into believing that he was an attorney with the firm. Respondent also acknowledges that, as the partner most responsible for Misch at Sindell, he had a responsibility under EC 3-6 to monitor Misch's use of firm resources to ensure that Misch did not exceed his authority and to alert Sindell clients that Misch was not an Ohio lawyer.

3

Accordingly, respondent has stipulated to a violation of DR 3-101(A), which provides, "A lawyer shall not aid a non-lawyer in the unauthorized practice of law." *Id.*

{¶ 9} The parties waived a formal evidentiary hearing. Based upon the foregoing stipulations, relator recommended that respondent be suspended from the practice of law for one year, with the entire suspension stayed. A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court, however, recommended that respondent receive a public reprimand. The panel noted respondent's active involvement in several bar associations, his admission of responsibility, and numerous letters attesting to his character and standing in the legal community. The panel also determined that respondent's misconduct in aiding Misch's unauthorized practice of law was due to neglect or omission rather than affirmative, deceitful conduct.

{¶ 10} The board adopted the findings, conclusions, and recommendation of the panel. Relator has filed objections in response to this court's show cause order.

—————————

*Jonathan E. Coughlan*, Disciplinary Counsel, and *John K. McManus*, Assistant Disciplinary Counsel, for relator.

*Mark H. Aultman* and *Charles W. Kettlewell*, for respondent.

—————————

**COOK, J.**

{¶ 11} Respondent has stipulated to a violation of DR 3-101(A), conceding that he aided Misch—an out-of-state attorney—in the unauthorized practice of law in Ohio. In Part I, below, we discuss the rules applicable to out-of-state attorneys who perform legal services in Ohio. In Part II, we consider the appropriate sanction for respondent's acknowledged misconduct.

I.  Preventing the Unauthorized Practice of Law by Out-of-State Attorneys

{¶ 12} A discussion of the rules pertaining to the in-state legal services rendered by out-of-state attorneys will assist members of the bar in preventing problems such as those that arose in this case from occurring in the future.  In Part A, we note that, although the text of DR 3-101(A) provides that "[a] lawyer shall not aid a *non-lawyer* in the unauthorized practice of law" (emphasis added), the rule prohibits Ohio attorneys from aiding either laypersons or *attorneys* unlicensed in Ohio in the unauthorized practice of law.  In Part B, we discuss some of the authorized methods for out-of-state attorneys to offer their legal expertise in Ohio.

A.  Aiding Out-of-State Attorneys in the Unauthorized Practice of Law

{¶ 13} Canon 3 of the Code of Professional Responsibility and its associated Ethical Considerations and Disciplinary Rules focus on preventing "laymen" or "non-lawyers" from engaging in the unauthorized practice of law.  In addition, EC 3-9 and DR 3-101(B) recognize the impropriety of attorneys' practicing law in jurisdictions where they are not licensed.  Our rules prohibiting the unauthorized practice of law are intended to protect Ohio citizens from the dangers of faulty legal representation rendered by persons not trained in, examined on, or licensed to practice by the laws of our state.  These dangers can arise from the services of out-of-state attorneys unfamiliar with Ohio's legal system as well as from the work of laypersons unschooled in the legal profession.  Accord *Ayamo v. State Bd. of Governors of Washington State Bar Assn.* (1946), 24 Wash.2d 706, 167 P.2d 674.  And since a state's internal attorney-discipline system can impose disciplinary sanctions only upon that state's own licensed attorneys, each state has an interest in restricting the practice of law within its borders to those attorneys who are subject to its disciplinary system.  See Gov.Bar R. IV(1) ("The Code of Professional Responsibility * * * shall be *binding upon all persons admitted to practice law in Ohio*" [emphasis added]); see, also, *18 Internatl. Ltd. v. Interstate Express, Inc.* (1982), 116 Misc.2d 66, 455 N.Y.S.2d 224.

**{¶ 14}** For these reasons, our Rules for the Government of the Bar define the "unauthorized practice of law" as "the rendering of legal services for another by *any person not admitted to practice in Ohio* under Rule I and not granted active status under Rule VI, or certified under Rule II [interns], Rule IX [temporary certification], or Rule XI [foreign legal consultants] of the Supreme Court Rules for the Government of the Bar." (Emphasis added.) Gov.Bar R. VII(2)(A). The rules also provide that an attorney who is admitted to the practice of law in another state, but not in Ohio, and who is employed by an Ohio law firm may not practice law in Ohio or hold himself or herself out as authorized to practice in Ohio until admitted to practice here. Gov.Bar R. VI(4)(D).

**{¶ 15}** An Ohio lawyer can aid the unauthorized practice of law and violate DR 3-101(A), then, by facilitating or failing to adequately limit, through supervision, the activities of a lawyer unlicensed in Ohio. Respondent has stipulated to such a violation in this case.

## B. Out-of-State Attorneys in Ohio

**{¶ 16}** Although we may enjoin out-of-state attorneys from engaging in the unauthorized practice of law in our state, and although Ohio attorneys such as respondent violate DR 3-101(A) by aiding out-of-state attorneys in the unauthorized practice of law, our state's Rules for the Government of the Bar are not blind to the interjurisdictional realities of modern legal practice. EC 3-9, part of the Code of Professional Responsibility adopted by this court in Gov.Bar R. IV, explicitly recognizes the tension that exists between our global society and each state's regulation of the unauthorized practice of law: "[T]he demands of business and the mobility of our society pose distinct problems in the regulation of the practice of law by the states. In furtherance of the public interest, the legal profession should discourage regulation that unreasonably imposes territorial limitations upon the right of a lawyer to handle the legal affairs of his client * * * including the presentation of a contested matter in a tribunal before which the

6

lawyer is not permanently admitted to practice." Our state's Rules for the Government of the Bar provide several avenues through which out-of-state attorneys may perform legal services in Ohio under certain circumstances.

### 1. *Admission Without Examination*

{¶ 17} Gov.Bar R. I(9) permits certain experienced out-of-state attorneys to apply for admission to the practice of law in Ohio without examination, when those attorneys intend to practice law in Ohio "actively and on a continuing basis." Gov.Bar R. I(9)(A)(6). Division (H) of this rule emphasizes that an applicant for admission must not engage in the practice of law in Ohio prior to the approval of his or her application and presentation of the applicant to this court by a licensed Ohio attorney. By its own terms, however, Division (H) does not apply to participation in litigation by out-of-state attorneys in Ohio cases when the attorney participates with leave of court.

### 2. *Registration for Corporate Status*

{¶ 18} Our rules also permit out-of-state attorneys employed full-time by nongovernmental Ohio employers (but *not* by Ohio law firms) to register for "corporate status." Gov.Bar R. VI(4). An out-of-state attorney granted corporate status under this section "may perform legal services in Ohio solely for a nongovernmental Ohio employer, as long as the attorney is a full-time employee of that employer." Gov.Bar R. VI(4)(A).

{¶ 19} There are several important caveats to this rule. An attorney granted corporate status may *not* practice before any Ohio court or agency on behalf of the attorney's Ohio employer "or any person except himself or herself, unless granted leave by the court or agency." Gov.Bar R. VI(4)(B). And out-of-state attorneys who perform legal services in Ohio for their employers but do not register or qualify to register under this rule are subject to referral for investigation concerning the unauthorized practice of law. Gov.Bar R. VI(4)(C).

**{¶ 20}** Finally, registration for corporate status *does not apply to out-of-state attorneys who are employed by, associated with, or partners in an Ohio law firm*. Gov.Bar R. VI(4)(D). "Until the attorney is admitted to the practice of law in Ohio, the attorney may not practice law in Ohio, hold himself or herself out as authorized to practice law in Ohio, or practice before any nonfederal court or agency in this state on behalf of any person except himself or herself, unless granted leave by the court or agency. The law firm may include the name of the attorney on its letterhead only if the letterhead includes a designation that the attorney is not admitted in Ohio." *Id.*

### 3. *Admission Pro Hac Vice*

**{¶ 21}** An out-of-state attorney who has not attained one of the above qualifications may still, with respect to a particular proceeding, appear before Ohio tribunals, participate in oral arguments, and file pleadings, memoranda, briefs, or other documents by following the applicable court rules of practice and obtaining admission *pro hac vice*. See, *e.g.,* S.Ct.Prac.R. I(2); Loc.R. 1.03 of the Court of Common Pleas of Lucas County, General Division; see, also, Gov.Bar R. I(9)(H).

### 4. *Limited Practice of Law by Foreign Legal Consultants*

**{¶ 22}** Those admitted to the practice of law in a foreign country or political subdivision thereof may apply for a certificate of registration as a foreign legal consultant. See Gov.Bar R. XI. Foreign legal consultants may render legal services in Ohio, but they are subject to significant limitations regarding both the scope of those services and the legal documents or instruments that they may draft. *Id.*, Section 5.

5. *Partnerships Among Lawyers Licensed in Different Jurisdictions*

{¶ 23} Lawyers authorized to practice law in different jurisdictions may form partnerships and use the same firm name in each jurisdiction so long as the firm letterhead and other permissible listings of members and associates "make clear the jurisdictional limitations" on those attorneys. DR 2-102(D).

{¶ 24} The foregoing discussion indexes some of the options available to out-of-state attorneys who wish to provide limited services to Ohio clients. In *Cleveland Bar Assn. v. Misch, supra,* 82 Ohio St.3d at 260-261, 695 N.E.2d at 247-248, this court discussed these rules, distinguished Misch's activities from those of a consultant, business broker, or paralegal, and held that Misch had impermissibly rendered legal services in Ohio. Respondent has acknowledged that he failed to monitor Misch to ensure that Misch did not mislead Sindell clients or exceed his limited authority, and that his breach of this duty led Sindell clients or former clients to erroneously believe that Misch was authorized to practice law in Ohio.

## II. Determining the Appropriate Sanction

{¶ 25} Relator objects to the board's recommendation that respondent receive a public reprimand, contending that respondent's misconduct—when measured against this court's precedent and the ABA Standards for Imposing Lawyer Sanctions—warrants a one-year suspension from the practice of law. We disagree, and adopt the findings, conclusions, and recommendation of the board.

{¶ 26} As relator notes, this court has not had occasion to consider the appropriate disciplinary sanctions for attorneys, such as respondent, who aid out-of-state attorneys in the unauthorized practice of law in Ohio. Our prior cases concerning DR 3-101(A) have addressed Ohio lawyers who aided nonlawyers in the unauthorized practice of law, and most have addressed situations where a violation of DR 3-101(A) was but one of several disciplinary violations.[1]

---

1. See, *e.g., Columbus Bar Assn. v. Culbreath* (2000), 88 Ohio St.3d 271, 725 N.E.2d 629 (respondent referred to nonlawyer as "my partner" and permitted him to make opening statements

A. *Wayne Cty. Bar Assn. v. Naumoff*

**{¶ 27}** Relator relies heavily on our 1996 *Naumoff* case because Naumoff's actual suspension resulted solely from a violation of DR 3-101(A)—the same violation that respondent has stipulated to here. *Wayne Cty. Bar Assn. v. Naumoff* (1996), 74 Ohio St.3d 637, 639, 660 N.E.2d 1177, 1178. But we find *Naumoff* distinguishable because Naumoff's prior disciplinary record affected the sanction. Respondent here lacks any prior disciplinary record.

**{¶ 28}** Moreover, the respondent in *Naumoff* aided a *nonlawyer* in the practice of law. At the time Misch engaged in the unauthorized practice of law in this case, he was admitted to the bar in Illinois and to the federal bar in Ohio, and the parties stipulated that he possessed considerable experience in corporate restructuring. Though Misch's legal qualifications do not excuse either Misch's unauthorized practice of law or respondent's violation of DR 3-101(A), they may reasonably have influenced the degree of supervision that respondent deemed appropriate or necessary while Misch performed what respondent erroneously believed to be permissible consulting services for Sindell clients.

---

and examine witnesses in felony trial); *Cuyahoga Cty. Bar Assn. v. Okocha* (1994), 69 Ohio St.3d 398, 632 N.E.2d 1284 (violation of DR 3-101[A] charged but not proven based on allegations that respondent's nonlawyer law clerk identified himself as an "associate"); *Bar Assn. of Greater Cleveland v. Nesbitt* (1982), 69 Ohio St.2d 108, 23 O.O.3d 157, 431 N.E.2d 323 (violation of DR 3-101[A] charged but not proven when respondent arranged transaction with client without alerting client that respondent split finder's fee paid by third-party borrower); *Stark Cty. Bar Assn. v. George* (1976), 45 Ohio St.2d 267, 74 O.O.2d 425, 344 N.E.2d 132 (Ohio attorney misrepresented material facts and left office in custody of his brother, a nonlawyer). See, also, *Attorney Grievance Comm. of Maryland v. Brown* (1999), 353 Md. 271, 725 A.2d 1069 (Maryland attorney violated Maryland rule against assisting unauthorized practice by introducing Virginia attorney as cocounsel to hearing examiner and including Virginia attorney's name on letterhead without indicating that associate was not admitted to practice in jurisdiction where office was located).

B. *Cincinnati Bar Assn. v. Fehler-Schultz*

{¶ 29} Relator also cites a case in which this court indefinitely suspended an Ohio attorney who aided the unauthorized practice of law by permitting one of his firm's investigators—another Ohio attorney, who was serving an indefinite suspension from the practice of law due to criminal convictions—to interview a client, negotiate with an insurer, obtain the client's signature on an unsigned contingency fee contract, and advise the client regarding settlement. *Cincinnati Bar Assn. v. Fehler-Schultz* (1992), 64 Ohio St.3d 452, 597 N.E.2d 79. As relator concedes, however, *Fehler-Schultz* did not concern an Ohio attorney who aided an out-of-state attorney in the unauthorized practice of law, and the respondent in that case committed additional disciplinary violations.

C. Application of the ABA Standards for Lawyer Sanctions

{¶ 30} Due to the lack of applicable precedent, we find the ABA Standards for Imposing Lawyer Sanctions to be a helpful methodology for determining the appropriate sanction in this case. See ABA Center for Professional Responsibility, Standards for Imposing Lawyer Sanctions (1991 & Amend.1992); see, also, *Disciplinary Counsel v. Brown* (1999), 87 Ohio St.3d 316, 720 N.E.2d 525. According to the ABA Standards, an attorney who aids the unauthorized practice of law violates a duty owed as a professional, and the recommended sanctions for such conduct appear in Standard 7.0 *et seq*. Relator correctly notes that Standard 7.2 recommends suspending an attorney who "*knowingly* engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system." (Emphasis added.) Relator contends that suspension is appropriate here, asserting that respondent "*knew* of all the attendant circumstances that allowed clients and others to conclude that Misch was an attorney."

{¶ 31} The ABA Committee's Introduction to Standard 7.0, however, provides, "While these standards have been developed out of a desire to protect

11

the public, such as by restricting practice to those persons who have met appropriate educational requirements, * * * *a sanction of disbarment or suspension will rarely be required, and a sanction of reprimand, admonition or probation will be sufficient to ensure that the public is protected and the bar is educated.*" (Emphasis added.) Standard 7.0, Introduction. The ABA Standards recommend that courts suspend or disbar attorneys for violations of DR 3-101(A) only in particularly egregious cases—and this is not one of those cases.

{¶ 32} We agree with relator that respondent's introductions to clients in the Better Meats and Kasper matters were misleading, for respondent told these clients that Misch was "working with" Sindell without specifically mentioning Misch's lack of an Ohio law license. Respondent also authorized a misleading letter and billing statement in the Better Meats matter. The letter quoted the same billing rate for "Partners and Mr. Misch," and the statement listed Misch as federal court counsel, but neither document indicated whether Misch was an attorney licensed to practice law in Ohio. And respondent arguably facilitated Misch's unauthorized actions in the Manfredi Motors matter by introducing Misch to Manfredi's tax counsel and then failing to monitor Misch's use of the Sindell letterhead or other firm resources. Respondent could have known earlier than he did that Sindell clients were being led to believe that Misch was licensed to practice law in Ohio.

{¶ 33} But like the panel and board, we conclude that respondent's acknowledged failures in these matters "arose more out of neglect by omission * * * as opposed to affirmative, deceitful conduct that enabled Misch to engage in the unauthorized practice of law." Thus we do not find that respondent's supervisory failings deserve the harsher discipline that the ABA Standards reserve for egregious intentional or knowing violations of DR 3-101(A). Accord *People v. Robinson* (Colo.1990), 803 P.2d 474 (applying ABA Standards, Supreme Court of

Colorado publicly censured attorney who failed to request that out-of-state attorney appearing on behalf of firm be specially admitted).

{¶ 34} Our decision to impose a lesser sanction is supported by the lack of aggravating factors and the presence of several mitigating factors in this case. Relator submits that respondent's "extensive experience as an attorney" should weigh in favor of a harsher sanction, since ABA Standard 9.22(i) includes "substantial experience in the practice of law" as a potential aggravating circumstance. We note, however, that when the Board of Commissioners on Grievances and Discipline recently proposed a list of aggravating factors that closely resembles the list in the ABA Standards, the board chose not to propose that an attorney's substantial experience be considered by the board in recommending a more severe sanction. See Board of Commissioners on Grievances and Discipline, Proposed Amendments to Rules and Regulations Governing Procedure on Complaints and Hearings, Section 10(A), Ohio Official Reports, Nov. 22, 1999 Advance Sheets, xlii, xlv.[2] Regardless, respondent's significant legal experience is not a compelling aggravating factor in this case.

{¶ 35} Relator also suggests that only three mitigating factors are appropriate for this court's consideration. First, relator acknowledges several letters that attest to respondent's character and standing in the community. Relator also acknowledges respondent's admission of responsibility. Finally, relator concedes that respondent's misconduct did not arise from affirmative deceit. We also find, however, two additional mitigating circumstances that appear in the board's own list of mitigating factors: respondent's lack of a prior disciplinary record and his cooperative attitude toward the disciplinary proceedings. *Id.*,

---

2. The proposed amendments became effective June 1, 2000. See Amendments to The Rules and Regulations Governing Procedure on Complaints and Hearings, Section 10(B), Ohio Official Reports, June 19, 2000 Advance Sheets, xvii, xix.

Section 10(B). The presence of these additional mitigating factors further supports our conclusion that a public reprimand is the appropriate sanction here.

### III. Conclusion

{¶ 36} Like the parties, the panel, and the board, we agree that respondent—as the Sindell partner most responsible for Misch—had a duty to ensure that Misch did not engage in the unauthorized practice of law. Respondent breached this duty and violated DR 3-101(A) by failing to disclose Misch's limited authority to Sindell clients and by failing to take steps to ensure that Misch did not manipulate Sindell resources to exceed that limited authority. But due to the lack of affirmative deceit on respondent's part, and due to the presence of several mitigating circumstances, we agree with the board that a public reprimand is the appropriate sanction in this case—a result that comports with the ABA Standards. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

————————————