DISCIPLINARY COUNSEL *v.* WOLF.

[Cite as *Disciplinary Counsel v. Wolf,*
110 Ohio St.3d 411, 2006-Ohio-4709.]

(No. 2006–0737—Submitted May 24, 2006—Decided September 27, 2006.)

---

**Per Curiam.**

{¶ 1} Respondent, Mary Lou Wolf of Loveland, Ohio, Attorney Registration No. 0074613, was admitted to the practice of law in Ohio in May 2002. On June 30, 2005, upon receiving notice that respondent had been convicted of two

felonies, we suspended her from the practice of law for an interim period pursuant to Gov.Bar R. V(5)(A). *In re Wolf,* 106 Ohio St.3d 1418, 2005-Ohio-3322, 830 N.E.2d 349.

{¶ 2} On August 8, 2005, relator, Disciplinary Counsel, charged that respondent's two convictions, both for procuring dangerous prescription drugs by deception in violation of R.C. 2925.22(A), constituted violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause, including the parties' comprehensive stipulations, and made findings of misconduct and a recommendation, which the board adopted.

## Misconduct

{¶ 3} In 1987, before her admission to the Ohio bar, respondent became a licensed registered nurse in Ohio. On October 14, 2004, respondent pleaded guilty to two violations of R.C. 2925.22(A), both felonies of the fifth degree, and was later sentenced to three years of community control under the supervision of the Clermont County Adult Probation Department. Her nursing license was suspended in May 2005.

{¶ 4} Respondent stipulated and the board found that her convictions and underlying conduct violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects upon her fitness to practice law).

## Recommended Sanction

{¶ 5} In recommending a sanction for respondent's misconduct, the board weighed the mitigating and aggravating factors of her case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 6} As to mitigation, the parties stipulated that respondent had no prior disciplinary record, had made timely, good-faith efforts to rectify the consequences of her misconduct, had cooperated in the disciplinary proceedings, and had already been sentenced for her crimes and that her drug dependence had contributed to cause her misconduct. BCGD Proc.Reg. 10(B)(2)(a), (c), (d), (f), and (g). The panel and board also noted the sincerity with which respondent expressed remorse for her misconduct and the lack of evidence to suggest that respondent's crimes had harmed a client or patient in her care.

{¶ 7} Elaborating on the extent of respondent's drug dependence, the panel and board observed that respondent's addiction began with a medical prescription

in 1995. For debilitating pain in her feet, respondent's doctor had prescribed Ultram, a drug that turned out to have highly addictive qualities. Respondent's reliance on the drug evolved into serious substance abuse, and near the end of 2003, she began to illegally authorize her own prescriptions. By that time, respondent had stopped practicing law to care for her terminally ill mother, who died in November 2003. After her arrest, respondent also stopped practicing as a nurse.

{¶ 8} Respondent acknowledged that her prescription-drug use had led to criminal proceedings once before. In 1998, before she became a lawyer, respondent received treatment in lieu of conviction after being charged with illegal drug procurement. Respondent was at that time ordered to serve a two-year probation, during which she was to receive treatment for drug dependence. Respondent completed the supervision period without further incident, and the charges against her were dismissed.

{¶ 9} Although respondent stopped using Ultram in 1998, she relapsed in late 2003. She has since rededicated herself to overcoming her addiction, and three witnesses shared their optimistic expectations for her recovery. Respondent's sponsor at Alcoholics Anonymous ("AA") testified that she has met with respondent weekly since April 2005 and that respondent is doing well in her recovery. A registered nurse once employed by the Ohio Board of Nursing to oversee an anti-alcohol-abuse and anti-drug-abuse compliance unit for nurses reported that she had been helping with respondent's recovery program since 2004 and considered respondent's prognosis for recovery excellent. Last, Stephanie Krznarich, associate director and clinical director of the Ohio Lawyers Assistance Program ("OLAP"), reported that respondent had signed an OLAP recovery contract in May 2004 and has since complied with all the contract terms, has attended AA meetings three times a week, and has stayed in contact with sponsors and others as required.

{¶ 10} Respondent also presented the deposition of her clinical psychologist, Dr. Kathleen Mack, whom she sees weekly. Dr. Mack has been treating respondent since January 2004 and reported that respondent's recovery prognosis is good, given the intensity of her treatment, her level of remorse, and the serious consequences she has already faced. Dr. Mack recommended that respondent be permitted to retain her law license.

{¶ 11} Relator advocated that respondent receive a two-year suspension and that the suspension be stayed while respondent serves a probation with conditions, including monitoring of respondent's practice. Relator also suggested these conditions for the stay: (1) that respondent continue treatment with her psychologist, fully adhering to Dr. Mack's advice; (2) that she continue her membership in and commitment to AA; (3) that she maintain her contract with OLAP and renew the contract during the suspension, if necessary, keeping in

compliance with all contract terms; and (4) that she continue to comply with all court orders issued in the underlying criminal case. Respondent agreed to abide by these conditions, but argued that monitoring was unnecessary, given all the other applicable forms of oversight.

{¶ 12} The panel recommended that respondent be suspended from the practice of law for two years, effective as of June 30, 2005, the date of her interim suspension, and that the entire suspension be stayed on the conditions that she (1) continue treatment with her psychologist, fully adhering to Dr. Mack's advice; (2) continue her membership in and commitment to AA; (3) maintain her contract with OLAP and renew the contract during the suspension, if necessary, keeping in compliance with all contract terms; and (4) continue to comply with all court orders issued in the underlying criminal case. Adopting the panel's report, the board also recommended a two-year conditionally stayed suspension, effective as of June 30, 2005. Neither party objects to this recommendation.

Review

{¶ 13} We adopt the board's findings that respondent violated DR 1–102(A)(4) and 1–102(A)(6). Based on the mitigating and aggravating factors determined by the board, we also accept the recommended sanction.

{¶ 14} In *Disciplinary Counsel v. May*, 106 Ohio St.3d 385, 2005-Ohio-5320, 835 N.E.2d 372, another lawyer's addiction to a painkilling prescription drug resulted in his being charged with two violations of R.C. 2925.22(A). We ordered a two-year suspension but stayed the suspension on conditions similar to those recommended here because of the significant mitigating effect of the lawyer's efforts to overcome his drug dependence. The fact that respondent has been convicted for her crimes distinguishes this case somewhat from *May*; nevertheless, we share the board's confidence in her commitment to recovery and also find a two-year, conditionally stayed suspension appropriate in this case.

{¶ 15} Respondent is therefore suspended from the practice of law in Ohio for two years, effective June 30, 2005. The suspension is stayed on the conditions that she (1) continue treatment with her psychologist, fully adhering to Dr. Mack's advice; (2) continue her membership in and commitment to AA; (3) maintain her contract with OLAP and renew the contract during the suspension, if necessary, keeping in compliance with all contract terms; and (4) continue to comply with all court orders issued in the underlying criminal case. If respondent fails to comply with the conditions of the stay, the stay will be lifted, and respondent shall serve the entire two-year suspension.

{¶ 16} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

Jonathan E. Coughlan, Disciplinary Counsel, Lori J. Brown, First Assistant Disciplinary Counsel, and Carol A. Costa, Assistant Disciplinary Counsel, for relator.

Dianna M. Anelli, for respondent.