DISCIPLINARY COUNSEL *v.* SCACCHETTI.

**[Cite as *Disciplinary Counsel v. Scacchetti,*
114 Ohio St.3d 36, 2007-Ohio-2713.]**

(No. 2006–2264—Submitted February 28, 2007—Decided June 20, 2007.)

———————————

**Per Curiam.**

{¶ 1} Respondent, David J. Scacchetti of Cincinnati, Ohio, Attorney Registration No. 0014117, was admitted to the practice of law in Ohio in 1982. The Board of Commissioners on Grievances and Discipline recommends that we now suspend respondent's license to practice for two years, staying the last 18 months on conditions, based on findings that he violated DR 1–102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude) and 1–102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on his fitness to practice law). On review, we find that respondent committed the cited violations of the Code of Professional Responsibility and that the recommended sanction is appropriate.

{¶ 2} Relator, Disciplinary Counsel, and respondent stipulated to the facts and misconduct alleged in relator's complaint. A three-member panel of the board also heard testimony in the cause and then made findings of fact and conclusions of law and a recommendation. The board adopted the panel's findings that respondent had violated DR 1–102(A)(3) and (6) and the recommendation for a two-year suspension with an 18–month conditional stay.

## Misconduct

{¶ 3} The Hamilton County Grand Jury indicted respondent on November 3, 2005, for possession of cocaine in violation of R.C. 2925.11, a felony of the fourth degree. In December 2005, after respondent pleaded guilty to the charged offense, the Hamilton County Court of Common Pleas granted his motion for treatment in lieu of conviction and ordered a stay of the criminal proceedings. The court ordered respondent to complete a three-year period of rehabilitation, inpatient treatment under the auspices of the ADAPT program, and all ordered aftercare.

{¶ 4} Respondent at one time had had a successful practice in civil and criminal litigation. He and his wife had practiced together until 2001, when she retired from law to work with a Cincinnati nonprofit organization. Respondent had also enjoyed athletics and good health.

{¶ 5} Roughly two years before the possession charge, however, respondent developed a chronic staph infection that caused painful open sores all over his body. Doctors were unable to cure the infection, and respondent suffered for some time under the ill effects. At about the same time, he also injured a disc in his neck, which added to his chronic pain and disability.

{¶ 6} Eventually, respondent resorted to using cocaine, which he described as a means to self-medicate against pain and depression. He was arrested in October 2005 while trying to buy cocaine for his own use. Within two weeks of his arrest, respondent voluntarily closed his law practice, and he has not practiced law since that time.

{¶ 7} In addition to treatment, the court ordered respondent to change his attorney registration status to inactive for a period of two years. The Supreme Court Attorney Registration Section has changed respondent's status to inactive.

{¶ 8} Following his arrest, respondent entered an intensive outpatient rehabilitation program at Bethesda North Hospital, which he completed in early December 2005. On December 7, 2005, respondent entered the inpatient ADAPT treatment program, in which he spent 112 days. Upon discharge, respondent entered into a four-year contract for recovery with the Ohio Lawyers Assistance Program ("OLAP"). Respondent checked in daily with OLAP Associate Director

Patrick Garry until mid-August 2006, when Garry no longer required respondent to make daily contact.

{¶ 9} Respondent was also in the ADAPT transitional program beginning in April 2006, having therapy sessions four days a week and submitting to drug screening. The last week in August 2006, respondent relapsed and tested positive for cocaine. The common pleas court ordered respondent to serve a week in jail and then enter an ADAPT transitional house. Respondent was still living in a transitional house as of the November 16, 2006 hearing before the board panel.

{¶ 10} While residing in the transitional house, respondent attends daily therapy sessions, participates in a 12–step recovery program, and has drug screens three times a week. In addition to his ADAPT treatment program, respondent frequently sees his psychiatrist. Respondent also takes medication to treat attention-deficit disorder. Respondent accepted that he could not return home until released by his ADAPT counselor and the common pleas court.

{¶ 11} Respondent's relapse occurred when he offered an old friend a ride home, and the friend unexpectedly offered him cocaine. Respondent said that he had learned valuable lessons from the relapse — that he needs to get help on a daily basis to maintain his sobriety, that he must address his problem every day, one day at a time, and that he can never be around cocaine or people who use it. Respondent assured the panel that his recovery is critical to him and that he must follow his recovery regimen if he is to transition from the structured ADAPT program back home over the next months.

{¶ 12} Based on the foregoing, we hold that respondent violated DR 1–102(A)(3) and (6).

### Sanction

{¶ 13} When imposing sanctions for attorney misconduct, we consider the duties violated, the actual or potential injury caused, the attorney's mental state, and sanctions imposed in similar cases. *Disciplinary Counsel v. Brown* (1999), 87 Ohio St.3d 316, 720 N.E.2d 525. Before making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Id. See, also, *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, and *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 726 N.E.2d 993.

{¶ 14} Respondent violated duties to the general public and the legal system by failing to operate within the bounds of the law. Moreover, although we have no evidence that respondent actually compromised his clients' cases and he insists

that he took steps to safeguard their interests, he acknowledges that he risked harm to his clients by practicing while impaired. Respondent also clearly knew that his cocaine use was illegal.

{¶ 15} In *Disciplinary Counsel v. Wolf,* 110 Ohio St.3d 411, 2006-Ohio-4709, 853 N.E.2d 1169, a lawyer's addiction to painkilling medication and a relapse after an earlier recovery resulted in two felony convictions for procuring dangerous prescription drugs by deception. We suspended that lawyer's license to practice for two years, but stayed the entire suspension on the conditions that the lawyer continue treatment with a psychologist, continue membership with Alcoholics Anonymous, maintain her contract with OLAP, and continue to comply with court orders in the underlying criminal case. We stayed the suspension despite the lawyer's relapse because she had proved renewed commitment to and reliable success in recovery. See, also, *Disciplinary Counsel v. May,* 106 Ohio St.3d 385, 2005-Ohio-5320, 835 N.E.2d 372 (two-year suspension stayed on conditions imposed when a lawyer's addiction to a painkilling prescription drug resulted in his being charged with two felonies for obtaining a dangerous drug by deception and his treatment in lieu of conviction).

{¶ 16} Also as stipulated by the parties, we find it mitigating that respondent has no prior disciplinary record, that he did not act out of a dishonest or selfish motive, that he cooperated in the disciplinary proceedings, and that he has already served some jail time for his crime. BCGD Proc.Reg. 10(B)(2)(a), (b), (d), and (f). The parties did not identify any aggravating factors. The parties advocated a two-year suspension, all stayed on conditions.

{¶ 17} A two-year suspension, all stayed on conditions, is consistent with *Wolf* and *May,* but it does not account for evidence suggesting that respondent is not yet ready to return to practice. Respondent's relapse in August 2006 troubled his OLAP counselor, and Garry testified that respondent should have a longer period, at least 10 to 12 months, of recovery behind him before he is allowed to resume the burdens of practicing law. According to Garry, respondent's relapse has increased his understanding of and commitment to lifelong recovery, but it also sent him back to the beginning of the recovery process.

{¶ 18} The sanction recommended by the board, a two-year suspension, with 18 months stayed on conditions to facilitate respondent's recovery, will ensure that respondent is not permitted to practice before he can do so competently, ethically, and professionally. BCGD Proc.Reg. 10(B)(2)(g)(iv). The six-month actual suspension also coincides with respondent's agreement with the common pleas court to remain on inactive lawyer status until December 2007.

{¶ 19} We therefore suspend respondent from the practice of law in Ohio for two years; however, we stay 18 months of this sanction on the conditions that during the entire two-year sanction, respondent (1) continue to participate in

OLAP and remain drug-free and alcohol-free, (2) submit to random drug and alcohol testing either through the common pleas court or OLAP, (3) attend an Alcoholics Anonymous or Narcotics Anonymous meeting at least once a week, and (4) continue to comply with all court orders in the underlying criminal case. With any application for reinstatement filed pursuant to Gov.Bar R. V(10)(A), respondent shall also provide a report from his treating psychiatrist certifying that he is competent to resume the practice of law. Upon reinstatement, respondent shall further resume practice on probation under Gov.Bar R. V(9) for the remaining portion of the stayed suspension. If respondent fails to comply with conditions of the stay and the probation, the stay will be lifted, and respondent will serve the entire two-year suspension.

{¶ 20} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Stacy Solochek Beckman, for relator.

Jack C. Rubenstein, for respondent.