COLUMBUS BAR ASSOCIATION *v.* MICCIULLA.

[Cite as *Columbus Bar Assn. v. Micciulla,*
106 Ohio St.3d 19, 2005-Ohio-3470.]

(No. 2004–2109—Submitted February 16, 2005—Decided July 20, 2005.)

**Per Curiam.**

{¶ 1} Respondent, James Micciulla of Columbus, Ohio, Attorney Registration No. 0044033, was admitted to the practice of law in Ohio in 1990. On April 19, 2004, relator, Columbus Bar Association, charged respondent with six counts of professional misconduct. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and, based on the parties' stipulations and other evidence, made findings of misconduct and a recommendation, which the board adopted.

Misconduct

*Count One—Murray*

{¶ 2} Respondent has been a sole general practitioner since 1994, representing clients mainly in domestic relations, criminal, and bankruptcy proceedings. In October 2000, George H. Murray engaged respondent to represent him in a divorce. Respondent advised Murray that his fee plus costs would be $650. Murray paid by installments and in January 2002 had paid the entire $650. Respondent later requested $105 more to pay for the cost of service by publication on Murray's wife, who was thought to be living in Texas. Murray objected to this charge because he had not expected to pay any more that the $650 respondent had initially quoted.

{¶ 3} Murray filed a grievance with relator in April 2002, alleging respondent's neglect of his case. Respondent later prepared divorce papers that Murray

signed, refunded the $650, and filed the divorce action on Murray's behalf. A divorce decree was entered in February 2004 after respondent also paid the filing fee and publication costs for the action.

{¶ 4} The parties stipulated and the board found based on clear and convincing evidence that respondent had violated DR 6–101(A)(3) (barring a lawyer from neglecting an entrusted legal matter), 7–101(A)(1) (requiring a lawyer to seek a client's lawful objectives), and 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract for legal services).

*Count Two—Kelley*

{¶ 5} Lloyd D. Kelley engaged respondent to file a personal bankruptcy case for him. By November 2001, Kelley had paid respondent the $625 they had agreed upon for fees and costs. Thereafter, respondent had some difficulty obtaining a list of creditors from Kelley and also had problems staying in contact with him.

{¶ 6} In July 2003, Kelley filed a grievance against respondent, alleging his failure to file a bankruptcy petition on Kelley's behalf. Respondent met with Kelley in August 2003, agreed to refund $200, and promised to proceed with the bankruptcy filing. Respondent filed the bankruptcy petition in August 2003 and later obtained Kelley's discharge as a debtor. Before the panel, respondent conceded that the filing delay was due in part to failures in his office procedures and that he had neglected Kelley's case by failing to keep him informed of his progress.

{¶ 7} The parties stipulated and the board found based on clear and convincing evidence that respondent had violated DR 6–101(A)(3), 7–101(A)(1), and 7–101(A)(2).

*Count Three—Keener*

{¶ 8} In April 2002, Janette Keener retained respondent to represent her in a divorce action, agreeing to pay him a total of $875 in fees and costs. As of February 2003, Keener had paid the entire amount and had instructed respondent to proceed with the divorce action. Respondent prepared the divorce papers, and Keener signed them.

{¶ 9} Keener's spouse had been recently released from prison, and neither she nor respondent knew the spouse's address for service of process. In March 2003, Keener called respondent at home and inquired about the status of the case. Although he did not have the case file with him, he told her that he thought the action had been filed. He was mistaken and later called Keener to advise that he had been unable to obtain a valid service address for her spouse.

{¶ 10} Thereafter, respondent failed to promptly respond to messages Keener left on his voice mail, and the parties stipulated that on March 26, 2003, she left a

message discharging him and telling him that she had retained new counsel and wanted her file returned. Respondent nevertheless filed the divorce action on April 2, 2003.

{¶ 11} Before the panel, respondent testified that he had spoken with Keener after that message and before filing the complaint and that she had verbally authorized him to file the signed divorce papers. The day after he filed the papers, the other attorney whom Keener had consulted called respondent, advising that respondent did not have Keener's authority to file the divorce. The second attorney promptly filed an appearance in the Keener divorce as substitute counsel. Respondent consequently withdrew from the case and refunded $575 to Keener.

{¶ 12} The parties stipulated and the board found based on clear and convincing evidence that respondent had thereby violated DR 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3) (prohibiting a lawyer from intentionally causing a client damage or prejudice).

*Count Four—Schmid*

{¶ 13} On October 21, 2002, Marc A. Schmid retained respondent to obtain the release of a vehicle-registration block that had been placed on his car because of the actions of someone else who had driven it. Respondent quoted Schmid a $300 fee. Respondent hoped to have the block lifted by Schmid's upcoming birthday, November 2, 2002, to allow Schmid to properly register the vehicle.

{¶ 14} Between November 2002 and early January 2003, Schmid left voice messages for respondent, asking about the status of his case, but respondent did not return the calls. On January 14, 2003, respondent moved the Delaware Municipal Court to release the registration block on Schmid's vehicle, sending Schmid a copy of the motion. On January 30, 2003, that court denied the motion as untimely, a disposition that respondent conceded was correct at the panel hearing.

{¶ 15} Thereafter, Schmid filed a motion to release the registration block on his own. On May 2, 2003, the municipal court granted Schmid's motion. Later that month, Schmid filed a grievance against respondent. In June 2003, respondent refunded the $300 that Schmid had paid.

{¶ 16} The parties stipulated and the board found by clear and convincing evidence that respondent had thereby violated DR 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3).

*Count Five—Trust Account*

{¶ 17} In connection with the previous four counts, respondent maintained a trust account for his clients' funds and a separate operating account for his business expenses. Because of incomplete recordkeeping, respondent could not

produce an accurate accounting of client funds in his trust account. Respondent conceded that fees paid by clients in Counts One through Four, some unearned, had occasionally been deposited directly into respondent's general operating account. The board also determined that respondent, who rarely had more than $1,000 in his trust account, had not lost any client's money.

{¶ 18} The parties stipulated and the board found by clear and convincing evidence that respondent had thereby violated DR 9–102(A)(2) (requiring a lawyer to maintain client funds and unearned fees in a trust account) and 9–102(B)(3) (requiring a lawyer to maintain complete records of all client funds and to render appropriate accounts regarding them).

*Count Six—Notice Concerning Malpractice Coverage*

{¶ 19} While representing the clients described in Counts One through Four, respondent did not maintain a policy of professional-liability insurance. Respondent also did not inform any of those clients that he did not maintain professional-liability insurance, nor did he obtain from his clients the necessary acknowledgment that he had provided this notice.

{¶ 20} The parties stipulated and the board found by clear and convincing evidence that respondent had thereby violated DR 1–104(A) and (B) (requiring a lawyer to notify clients if he does not maintain adequate malpractice insurance and to keep the client's signed acknowledgement of the notice).

### Sanction

{¶ 21} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. ("BCGD Proc.Reg."). As aggravating features, the parties stipulated that respondent had engaged in a pattern of misconduct and committed multiple offenses. BCGD Proc.Reg. 10(B)(1)(c) and (d). In mitigation, the parties stipulated that respondent had no prior disciplinary record, had no dishonest or selfish motive, and had cooperated during relator's investigation. BCGD Proc.Reg. 10(B)(2)(a), (b), and (d).

{¶ 22} The board accepted these stipulations, noting also that respondent had allowed his attorney registration to lapse in September 2001 due to financial difficulty but had reinstated it on April 8, 2003. The board observed that since the grievances were filed, respondent has obtained professional liability insurance to comply with DR 1–104.

{¶ 23} The board accepted as mitigating that respondent has been very active in providing pro bono legal services to the homeless and the poor through Legal Aid and the Columbus Bar Association's Life Saver Program and has unselfishly

devoted many hours to these clients. Respondent has also provided free legal services or charged a nominal fee to represent women referred from Choices, an organization for battered women. Moreover, the board credited several letters from respondent's professional acquaintances that highly commended his character.

{¶ 24} In addition, respondent has, with relator's help, consulted the Ohio Lawyers Assistance Program ("OLAP") about his health and well-being. After a medical evaluation, respondent learned of previously undiagnosed medical conditions, including an anxiety disorder and dysthymia, or low-grade depression, that contributed to his feeling overwhelmed by his caseload and to his procrastination. The executive director of OLAP, Scott R. Mote, testified, based in part on a psychologist's report, that respondent has responded favorably to treatment and is capable of practicing law, although respondent would benefit from another lawyer's oversight. BCGD Proc.Reg. 10(B)(2)(g). Respondent has agreed to an OLAP contract to help him manage these conditions and, in turn, more responsibly manage his law practice. Finally, the board was impressed with respondent's testimony describing at length his embarrassment and contrition over his misconduct and his earnest desire to get his life and practice back on track.

{¶ 25} Adopting the panel's recommendation and sanction suggested by the parties, the board recommended a one-year suspension, stayed on conditions. The conditions are (1) that respondent be placed on probation for one year, during which his client trust account, case-file management, and other office practices will be supervised by a monitoring attorney and (2) that respondent's physical and mental health regimen be monitored by OLAP for compliance with respondent's contract.

{¶ 26} Upon review, we agree that respondent violated DR 6–101(A)(3), 7–101(A)(1), (2), and (3), 9–102(A)(2), 9–102(B)(3), and 1–104(A) and (B), as found by the board. Moreover, we ordered a one-year stayed suspension with probation in *Columbus Bar Assn. v. Halliburton–Cohen*, 94 Ohio St.3d 217, 2002-Ohio-640, 761 N.E.2d 1040, for misconduct similar to respondent's and for similar mitigating and aggravating factors. Thus, we also agree that the recommended sanction is appropriate.

{¶ 27} Respondent is therefore suspended from the practice of law in Ohio for one year; however, this suspension is stayed on conditions. The conditions are (1) that respondent be placed on probation in accordance with Gov.Bar R. V(9) for one year, during which his client trust account, case-file management, and other office practices will be supervised by a monitoring attorney and (2) that respondent's physical and mental health regimen be monitored during the probation period by OLAP for compliance with respondent's contract. If respondent

violates the conditions of the stay, the stay will be lifted and respondent will serve the entire one-year suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

———

Mary Jo Cusack, Bruce A. Campbell, Bar Counsel, and Jill M. Snitcher McQuain, Assistant Bar Counsel, for relator.

Mark H. Aultman, for respondent.