CLEVELAND BAR ASSOCIATION *v.* NORTON.

[Cite as *Cleveland Bar Assn. v. Norton,* 116
Ohio St.3d 226, 2007-Ohio-6038.]

(No. 2007–1120—Submitted August 14, 2007—Decided November 15, 2007.)

**Per Curiam.**

{¶ 1} Respondent, Eric E. Norton of Cleveland Heights, Ohio, Attorney Registration No. 0071563, was admitted to the practice of law in Ohio in 1999.

{¶ 2} The Board of Commissioners on Grievances and Discipline has recommended that we suspend respondent's license to practice for six months, all stayed on conditions, based on findings that he neglected two clients' cases, failed to advise the clients that he lacked malpractice insurance, and failed to cooperate in efforts to investigate alleged misconduct. On review, we agree that respondent violated the Code of Professional Responsibility and that a six-month stayed suspension is appropriate.

{¶ 3} Relator, Cleveland Bar Association, charged respondent with four counts of professional misconduct, later dismissing Count III of the complaint along with several allegations of impropriety contained within Counts I, II, and IV. A panel of the board heard the cause and, based on the parties' extensive stipulations and other evidence, made findings of misconduct and recommended a one-year license suspension, all stayed. The board adopted the panel's findings of misconduct but modified the recommendation to the stayed six-month suspension.

{¶ 4} Neither party has objected to the board's recommendation.

Misconduct

*Count I—The Todd Case*

{¶ 5} In early February 2005, Linda Todd, a nurse at a healthcare facility, slipped and fell in the facility's parking lot. While Todd was receiving workers' compensation, her employer discharged her for missing work. Todd agreed to have respondent file a retaliation claim on her behalf, and respondent advised

Todd's former employer that she anticipated filing a claim for unlawful retaliation under R.C. 4123.90.

{¶ 6} Todd signed a retainer agreement in which respondent promised to investigate and file her claim on a contingent-fee basis. The agreement also provided for respondent's withdrawal if he determined "at any time that prosecution is not feasible." Respondent had no professional-liability insurance while representing Todd but failed to so advise his client.

{¶ 7} Over the next few months, Todd sent respondent copies of her medical records and a written account detailing her accident. She also repeatedly called respondent to ask questions about her case. Respondent did not return a number of those calls, but in early May 2005, he emailed Todd and asked about the possibility of settling her case. Todd sent respondent information about her economic losses, and respondent promised to relay a settlement offer to her former employer. He never did.

{¶ 8} Over the next several weeks, Todd again had difficulty getting respondent to return her calls. In June 2005, Todd expressed in an email to respondent her dissatisfaction with his progress and her concern over an impending 180–day statute of limitations deadline. Respondent did not reply to the email, or file suit on Todd's behalf, or do any other work in the case for the rest of 2005.

{¶ 9} In February 2006, respondent called Todd's home, apparently because he heard that she had inquired about him from his former law firm, and told her husband that he was withdrawing from her case. On February 23, 2006, respondent sent Todd's case file to her with a letter advising that he could not continue representing her. He explained: "I am not withdrawing from your case because it lacks merit, but because the dollar losses are too low to justify litigating this case on a contingent fee basis."

{¶ 10} Respondent suggested in his letter that Todd hire another attorney. He did not, however, describe her claim as one for retaliation under R.C. 4123.90. He instead referred to Todd's case as a wrongful discharge in violation of public policy, citing cases including *Coolidge v. Riverdale Local School Dist.*, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, syllabus ("An employee who is receiving temporary total disability compensation pursuant to R.C. 4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition") and advising that a four-year statute of limitations applied. Respondent then wished Todd "good luck," saying nothing about the statute of limitations in R.C. 4123.90, which had by that time elapsed.

{¶ 11} Respondent did not disclose his lack of malpractice insurance, failed to complete promised work, and then dropped Todd's case. Respondent has admitted, and we agree, that he thereby violated DR 1–104(A) (requiring a

lawyer to advise clients if the lawyer does not carry sufficient malpractice insurance), 2–110(A)(2) (requiring a lawyer to take reasonable steps to avoid foreseeable prejudice to the rights of the client before withdrawing from representation), 2–110(C)(5) (requiring a lawyer to obtain a client's free and knowing assent before withdrawing from representation when the lawyer is not otherwise justified in withdrawing under the rule), 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), 7–101(A)(1) (prohibiting a lawyer from intentionally failing to seek the lawful objectives of a client), and 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract for professional employment).

### Count II—The Torres Case

{¶ 12} In August 2004, Frances Torres retained respondent to represent her in a personal injury claim against an ice cream manufacturer after she choked on a foreign object while eating one of the manufacturer's products. Torres signed a retainer agreement in which respondent promised to investigate and file her claim on a contingent-fee basis. Torres also gave respondent the foreign object and the product packaging to help him prepare the case. Respondent had no professional-liability insurance while representing Torres and did not so advise his client.

{¶ 13} Respondent contacted the ice cream manufacturer in early September 2004 to advise of the Torres claim, and a claims representative asked for evidence of the incident and injury. Respondent provided this evidence but then took no action in the case until November 2005, when Torres threatened to file a grievance against him. Before then, Torres had tried repeatedly to contact respondent, but he had not returned many of her calls.

{¶ 14} Within a week after Torres's warning, respondent sent a settlement demand to the claims representative and, for approximately six months, tried to negotiate a settlement. Torres submitted her grievance to relator in December 2005 but, by March 2006, she had reconsidered and decided to keep respondent as her lawyer. Respondent ultimately obtained a settlement offer that Torres accepted.

{¶ 15} Respondent did not disclose to Torres his lack of malpractice insurance or properly communicate with her about her case. He stipulated, and we agree, that he thereby violated DR 1–104(A) and 6–101(A)(3).

### Count IV—Failure to Cooperate

{¶ 16} In December 2005, relator sent two certified letters to respondent, requesting a written response to the Torres grievance and another grievance. Respondent received the letters but did not reply as requested. Relator sent

respondent two more letters in January 2006, this time requesting his responses by February 3, 2006. Respondent did not reply as requested.

{¶ 17} Respondent did, however, appear in March 2006 in response to a subpoena for his deposition and answered questions about the two grievances. Since that time, respondent has cooperated appropriately with efforts to investigate allegations of his misconduct. Respondent admitted and we agree that his initial unresponsiveness violated Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in a disciplinary investigation).

### Sanction

{¶ 18} When imposing sanctions for attorney misconduct, we consider the duties violated, the actual or potential injury caused, the attorney's mental state, and sanctions imposed in similar cases. *Disciplinary Counsel v. Brown* (1999), 87 Ohio St.3d 316, 320, 720 N.E.2d 525. Before making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). See id. See, also, *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, and *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 726 N.E.2d 993.

{¶ 19} Respondent may not have caused his clients financial loss—Todd's claim arguably remained actionable under *Coolidge*, she found another job at the same salary to mitigate her damages, and respondent successfully settled Torres's claim. He nevertheless injured his clients by shrugging off their legitimate expectations that he would diligently pursue their interests. He also failed the legal profession and the public by ignoring the inquiries of disciplinary authorities charged with monitoring the profession.

{¶ 20} In his defense, respondent insisted that he did not deliberately ignore his clients. He explained that he had simply "bitten off more than he could chew" while trying to practice on his own for the first time. Respondent described his misconduct as careless mistakes and assured that he has since taken steps to improve the way he does business.

{¶ 21} In recommending a one-year stayed suspension, the panel cited *Columbus Bar Assn. v. Micciulla*, 106 Ohio St.3d 19, 2005-Ohio-3470, 830 N.E.2d 332, in which we imposed this sanction and probation on a lawyer who had committed six counts of misconduct. That lawyer neglected four clients' cases, failed to seek the clients' objectives, failed to carry out his professional employment contracts, and failed to disclose his lack of malpractice insurance. That lawyer also commingled and did not properly account for clients' funds in violation of DR 9–102(A)(2) and (B)(3), and he intentionally injured two clients' interests in violation

of DR 7–101(A)(3). The incidents of misconduct in *Micciulla* more than marginally surpass respondent's improprieties.

{¶ 22} Respondent has expressed remorse and faced up to his wrongdoing, a mitigating factor under BCGD Proc.Reg. 10(B)(2)(d). He has no prior disciplinary record, see BCGD Proc.Reg. 10(B)(2)(a), and has obtained malpractice insurance. Through the testimony of colleagues and clients, respondent has also established his good character and reputation apart from the underlying misconduct. See BCGD Proc.Reg. 10(B)(2)(e). Finally, the aggravation evidence is fairly minimal—respondent acted in his own financial interest in dropping the Todd case, but he did not do anything dishonest. See BCGD Proc.Reg. 10(B)(1)(b).

{¶ 23} In support of its recommendation, the board also cited *Columbus Bar Assn. v. Watson*, 106 Ohio St.3d 298, 2005-Ohio-4983, 834 N.E.2d 809. In *Watson*, we suspended a lawyer's license for six months, but stayed the suspension, because he neglected a client's divorce case by failing to properly supervise a paralegal and then failing to disclose that he lacked malpractice insurance. Respondent's neglect and failure to disclose are comparable to the improprieties committed in *Watson*.

{¶ 24} Moreover, the board recommended as a condition of the six-month stay that respondent be required to pursue continuing legal education ("CLE") in law-office and case-file management, apparently attributing most of respondent's problems to poor organizational skills in his practice. We agree with this assessment. In cases of lawyers with similar problems, we have stayed six-month suspensions on the same condition. See *Dayton Bar Assn. v. Sebree*, 96 Ohio St.3d 50, 2002-Ohio-2987, 770 N.E.2d 1009; *Disciplinary Counsel v. Harp* (2001), 91 Ohio St.3d 385, 745 N.E.2d 1032; *Cincinnati Bar Assn. v. Wilson* (2000), 89 Ohio St.3d 243, 730 N.E.2d 957.

{¶ 25} Respondent is therefore suspended from the practice of law in Ohio for six months; however, the suspension is stayed on the conditions that respondent complete six hours of CLE in law-office and case-file management and commit no further misconduct during the suspension period. If respondent fails to comply with the conditions of the stay, the stay shall be lifted, and respondent shall serve the entire six-month suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., concurs in judgment only.

Harold Reader and Gregory J. Phillips, for relator.

Eric E. Norton, pro se.