Cuyahoga County Bar Association *v.* Drain.

[Cite as *Cuyahoga Cty. Bar Assn. v. Drain,*
120 Ohio St.3d 288, 2008-Ohio-6141.]

(No. 2008–0771—Submitted June 24, 2008—Decided December 3, 2008.)

---

**Per Curiam.**

{¶ 1} Respondent, John Michael Drain Jr. of Euclid, Ohio, Attorney Registration No. 0003656, was admitted to the practice of law in Ohio in 1970.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we publicly reprimand respondent, based on the finding that he failed to advise his client that he had no professional-liability insurance. We, however, find that respondent also lost a client's malpractice claim through neglect and inadequate preparation by missing the statute of limitations. Moreover, he intentionally prejudiced his client's interests by repeatedly missing established deadlines and, in the meantime, canceling his legal-malpractice insurance without warning to her. For these violations of the Code of Professional Responsibility, we suspend respondent's license to practice for six months, but stay the suspension on remedial conditions.

{¶ 3} Relator, Cuyahoga County Bar Association, charged respondent in a two-count complaint with professional misconduct, including violations of DR 1–104(A) (requiring a lawyer to inform the client "at any time subsequent to the engagement if the lawyer does not maintain professional liability insurance"), 6–101(A)(2) (prohibiting a lawyer from handling a legal matter without adequate preparation under the circumstances), 6–101(A)(3) (prohibiting a lawyer from neglecting a legal matter), and 7–101(A)(3) (prohibiting a lawyer from intentionally damaging or prejudicing a client during the professional relationship). A panel of the board heard the case, including the parties' extensive stipulations, found violations of those Disciplinary Rules except for DR 7–101(A)(3), and recom-

mended a public reprimand. The board found a violation of only DR 1–104(A) and adopted the panel's recommendation.

{¶ 4} Neither party has filed objections to the board's report.

## I.  Misconduct

{¶ 5} From mid-January 2002 until mid-February 2006, respondent represented Robin Kiefer on a contingent-fee basis in a dental-malpractice case against Mark Domo, D.D.S. Kiefer claimed that she had sustained a neurological injury to her tongue from Dr. Domo's professional negligence during dental treatment on November 2, 2001. Early on in the representation, respondent advised Kiefer that she was required to file her malpractice claim against Dr. Domo within a one-year statute of limitation.

### A.   The First Complaint Filed on Kiefer's Behalf

{¶ 6} On November 1, 2002, one day before the filing deadline, respondent directed a "180–day letter" to Dr. Domo, pursuant to former R.C. 2305.11(B)(1), Sub.S.B. No. 108, 149 Ohio Laws, Part I, 382, 413, thereby extending the time for filing Kiefer's complaint by six months. Because of the close timing, respondent's associate hand-delivered the letter to the doctor.

{¶ 7} Respondent did not file Kiefer's complaint, however, until June 23, 2003, more than one month after the 180–day extension had expired. During the weeks before this late filing, respondent had consulted Kiefer about the missed deadline, telling her that he would try to salvage the claim, and for the rest of 2003, Kiefer's case remained active on the trial court docket. Then on January 12, 2004, respondent missed another deadline—the court-ordered date for filing the report of the plaintiff's expert.

{¶ 8} Respondent moved on Kiefer's behalf for an extension to file her expert's report; Dr. Domo's counsel moved for summary judgment. In March 2004, the trial court denied the motion for the extension as untimely and denied the motion for summary judgment because a factual dispute existed as to whether Kiefer knew or should have known about her injury as of her November 2, 2001 dental appointment. Respondent, doubting that his client could prevail without an expert witness, thereafter voluntarily dismissed Kiefer's case without prejudice under Civ.R. 41(A).

### B.   The Second Complaint Filed on Kiefer's Behalf

{¶ 9} Respondent refiled the Kiefer complaint in early May 2004 and this time obtained her expert's report long before the court-ordered deadline for filing it. On January 31, 2005, however, Domo moved for summary judgment, again asserting that the complaint was time-barred. Respondent missed another deadline when he failed to timely oppose the motion for summary judgment.

{¶ 10} In early March 2005, respondent filed an untimely motion for an extension to respond to the motion for summary judgment. The trial court denied the extension and on March 18, 2005, granted summary judgment for the defense, citing respondent's failure to file the complaint within the time limit. The trial court also denied respondent's motions to file instanter his brief in opposition to the motion for summary judgment and for reconsideration.

{¶ 11} Respondent appealed on April 15, 2005, still trying to salvage Kiefer's claim. The appellate court affirmed the trial court's judgment. As a result, Kiefer lost her claim for damages, not for lack of merit but for an avoidable failure to file the claim on time.

### C. Respondent's Explanations for His Neglect and Lack of Preparation

{¶ 12} Respondent advised Kiefer that he had missed the 180–day extension for filing her malpractice claim. He acknowledged having missed that deadline by mistake and through his administrative oversight. Confirming this, respondent's administrative assistant at the time testified that though respondent had prepared the complaint on time, "somehow it must have [fallen] through the cracks." Respondent further blamed himself for his failure to file the expert report, although he also cited the expert's demanding schedule and frequent unavailability.

{¶ 13} Respondent said nothing to Kiefer about dismissing her first case, which the court had already set for trial, or about refiling the complaint. Respondent accepted responsibility for his failure to oppose the defendant's motion for summary judgment in the refiled action but offered a variety of rationalizations. He blamed the overwhelming task of managing his two law offices. He also claimed that as a long-time practitioner in Cuyahoga County, he was accustomed "to things taking a long time and * * * nobody observing deadlines." Respondent additionally cited his overconfidence, after coming off his earlier success, in being able to again overcome a motion for summary judgment.

### D. Respondent's Lack of Malpractice Insurance

{¶ 14} Respondent ceased representing Kiefer on February 17, 2006, shortly after he apprised Kiefer of the decision of the court of appeals. He did not at any time tell her that he had canceled his malpractice insurance, a claims-made policy, on March 8, 2005, in anticipation of accepting employment as a judge's law clerk. Without providing notice to either Kiefer or his carrier of her potential claim, respondent canceled his insurance just after he filed his request for an extension to respond to the second defense motion for summary judgment and just before the court granted summary judgment.

{¶ 15} When respondent canceled his insurance, he was in Chapter 13 bankruptcy, which he had been in since July 15, 2004. Respondent has not listed

Kiefer as a potential creditor in the bankruptcy. She has since consulted another lawyer, who declined to represent her in a malpractice claim against respondent because respondent had no assets.

### E. Disciplinary Rule Violations

{¶ 16} Respondent failed to file Kiefer's first lawsuit timely, even after barely preserving it with the 180–day extension. He failed to file the plaintiff's expert's report in a timely fashion or seek an extension before the court-ordered deadline. Respondent also failed to timely oppose the defense's second motion for summary judgment or to seek an extension within the time prescribed.

{¶ 17} These failures, as the panel found, showed lack of adequate preparation and established the neglect prohibited by DR 6–101(A)(2) and 6–101(A)(3). Moreover, respondent's failure to advise Kiefer that he no longer carried malpractice insurance warranted the findings by the panel and the board that he had violated DR 1–104(A). These failures, however, do not completely cover respondent's misconduct.

{¶ 18} Respondent repeatedly missed deadlines before and after canceling his malpractice insurance, all the while remaining confident, by his own admission, that he could salvage Kiefer's case. From the proximity of these events, we conclude that respondent knowingly ignored the odds that his arguments on Kiefer's behalf might fail, leaving her without any recourse. We therefore find clear and convincing proof that respondent intentionally prejudiced his client and thereby violated DR 7–101(A)(3).

## II. Sanction

{¶ 19} "When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties violated and sanctions imposed in similar cases." *Cincinnati Bar Assn. v. Mullaney,* 119 Ohio St.3d 412, 2008-Ohio-4541, 894 N.E.2d 1210, ¶ 28. "Before making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ('BCGD Proc.Reg.'). *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 384, 726 N.E.2d 993." *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 20} We have already discussed how respondent breached ethical duties owed to his client. Though he realized he had neglected and failed to adequately prepare his client's case, respondent nevertheless canceled his malpractice insurance, a claims-made policy, destroying virtually all of Kiefer's prospects for recovery. Because of the intentional element of this misconduct, we find *Cleveland Bar Assn. v. Norton,* 116 Ohio St.3d 226, 2007-Ohio-6038, 877 N.E.2d 964, instructive.

{¶ 21} In *Norton*, the attorney neglected two clients' cases, failed to advise them that he lacked malpractice insurance, and initially failed to cooperate in the investigation of his misconduct. We found the lawyer in violation of DR 1–104(A) for his failure to disclose his lack of malpractice insurance, DR 6–101(A)(3) for his neglect, DR 7–101(A)(1) for his intentional failure to seek a client's lawful objectives, DR 7–101(A)(2) for his intentional failure to carry out a contract of professional employment, and DR 2–110(A)(2) and (C)(5) for his concomitant failure to properly withdraw. Consistent with cases in which such misconduct resulted largely from poor law-office management, we suspended the lawyer's license to practice for six months but stayed the suspension on conditions that he take relevant continuing-legal-education ("CLE") courses and commit no further misconduct during the suspension period. Id., 116 Ohio St.3d 226, 2007-Ohio-6038, 877 N.E.2d 964, ¶ 25.

{¶ 22} Respondent's misconduct is comparable to the wrongdoing in *Norton*, as are the mitigating and aggravating circumstances of his case. Respondent has expressed remorse and acknowledged wrongdoing, as Norton did. See BCGD Proc.Reg. 10(B)(2)(d). Norton had no prior disciplinary record, and neither does respondent. See BCGD Proc.Reg. 10(B)(2)(a). And like Norton, respondent has established his good character and reputation apart from the underlying misconduct, by showing, among other things, that he has been a dedicated volunteer for the Ohio Lawyers Assistance Program for many years. See BCGD Proc.Reg. 10(B)(2)(e). Respondent did not mismanage his client's case for financial gain as did the respondent in *Norton*, 2007-Ohio-6038, ¶ 22; however, he has apparently made no efforts to compensate Kiefer for her loss, which is an aggravating factor. See·BCGD Proc.Reg. 10(B)(1)(i). Finally, neither respondent nor Norton acted dishonestly, and both later obtained malpractice insurance. See BCGD Proc. Reg. 10(B)(1)(b). We therefore follow *Norton* and impose the same sanction on respondent as we imposed on the lawyer in *Norton*.

{¶ 23} Respondent is suspended from the practice of law in Ohio for six months; however, the suspension is stayed on the conditions that respondent (1) complete six hours of CLE in law-office and case-file management and (2) commit no further misconduct during the suspension period. If respondent fails to comply with the conditions of the stay, the stay will be lifted, and respondent will serve the entire six-month suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———

McCarthy, Lebit, Crystal & Liffman Co. and Richard A. Rabb; and Ellen S. Mandell, Bar Counsel, for relator.

John Michael Drain Jr., pro se.