[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 316.]

OFFICE OF DISCIPLINARY COUNSEL V. BROWN

[Cite as *Disciplinary Counsel v. Brown*, 1999-Ohio-74.]

*Attorneys at law—Misconduct—Permanent disbarment—Engaging in illegal conduct involving moral turpitude—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Engaging in conduct prejudicial to the administration of justice—Engaging in conduct adversely reflecting on fitness to practice law—Failing to deliver all papers and property to which client is entitled—Failing to promptly refund any part of a fee paid in advance that has not been earned— Neglecting an entrusted legal matter—Failing to seek lawful objectives of client—Neglecting or refusing to assist in disciplinary investigation.*

(No. 99-1572—Submitted October 12, 1999—Decided December 22, 1999.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 98-100.

———————————

{¶ 1} The following facts gave rise to the disciplinary charges brought against the respondent, Bruce E. Brown of Shaker Heights, Ohio, Attorney Registration No. 0039782. In 1997, Delphine Coleman retained respondent to expunge two criminal convictions from her record. Coleman paid respondent in full, and respondent gave Coleman a copy of an application for expungement. The following month, however, Coleman was denied a residential lease on the basis of her criminal record. Coleman later discovered that the court had no records showing that her application for expungement had ever been filed. Coleman called respondent on more than one occasion to inquire about the problem, but respondent was reachable only through a pager, and rarely returned Coleman's calls.

Eventually, Coleman fired respondent and requested that he refund her money and return her file. Respondent, however, refused to do either.

{¶ 2} Coleman complained to relator, Office of Disciplinary Counsel, which sent a letter of inquiry to respondent. Respondent, however, failed to respond to relator's first letter of inquiry. Accordingly, relator sent a second letter of inquiry to respondent, and this time respondent provided a response. Relator then served respondent with a subpoena *duces tecum* ordering him to appear for a deposition in October 1997. Respondent failed to appear for the deposition, even though he had assured relator that he would be present. Eventually, respondent appeared at a rescheduled deposition. At that time, respondent conceded that he had received relator's first letter of inquiry, as well as the subpoena for the original deposition.

{¶ 3} At the rescheduled deposition, respondent claimed that some of his conduct resulted from his addiction to cocaine, which he had started using in law school. For example, respondent claimed that he had traveled to Columbus with the intention to attend the originally scheduled deposition but that he had missed the deposition after he used cocaine that day. Respondent also admitted that his addiction to cocaine caused him to miss one or two court appearances for other clients but that he was able either to contact the court with an excuse for his nonappearance or secure a replacement on those occasions.

{¶ 4} Respondent testified that he had stopped using cocaine a few months before, though unaccompanied by any treatment or counseling. Respondent admitted that although Disciplinary Counsel had previously provided contact information for the Ohio Lawyers Assistance Program ("OLAP"), he had failed to contact OLAP before the deposition. Once again, Disciplinary Counsel urged respondent to contact OLAP, and he agreed, but later refused to participate in the rehabilitative program.

2

{¶ 5} At his deposition, respondent also admitted that he had been sanctioned on three previous occasions for failing to meet Ohio's continuing legal education requirements and that this conduct resulted in a temporary suspension from the practice of law in Ohio from August 1995 to November 1996.

{¶ 6} Relator charged respondent with violating several Disciplinary Rules, as well as a Rule for the Government of the Bar. Respondent failed to answer, and the matter was submitted to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") on the complaint, relator's motion for default judgment, and attached exhibits.

{¶ 7} The panel found the facts as previously set forth and concluded that respondent's conduct violated DR 1-102(A)(3) (engaging in illegal conduct involving moral turpitude), 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (engaging in conduct that is prejudicial to the administration of justice), 1-102(A)(6) (engaging in conduct adversely reflecting on a lawyer's fitness to practice law) (two violations), 2-110(A)(2) (upon withdrawal, failing to deliver all papers and property to which the client is entitled), 2-110(A)(3) (upon withdrawal, failing to promptly refund any part of a fee paid in advance that has not been earned), 6-101(A)(3) (neglecting an entrusted legal matter), 7-101(A)(1) (failing to seek the lawful objectives of the client), and Gov.Bar R. V(4)(G) (neglecting or refusing to assist in a disciplinary investigation). In mitigation, the panel found that respondent's conduct was "apparently caused" by his cocaine addiction.

{¶ 8} Disciplinary Counsel requested that respondent be permanently disbarred. The panel recommended, however, that respondent be indefinitely suspended from the practice of law in Ohio. The board adopted the findings, conclusions, and recommendation of the panel.

_____

*Jonathan E. Coughlan*, Disciplinary Counsel, and *Kenneth R. Donchatz*, Assistant Disciplinary Counsel, for relator.

*Bruce E. Brown*, *pro se*.

_____

**COOK, J.**

**{¶ 9}** We adopt the findings and conclusions of the board, but we determine that disbarment is the appropriate sanction in this case. In Part I, we demonstrate that our decision to disbar respondent in this case comports with sanctions we have imposed in previous cases involving comparable ethical violations. In Part II, we support our determination with the methodology employed in the ABA Standards for Imposing Lawyer Sanctions, which closely track guidelines for sanctions that were recently proposed for adoption by the Board of Commissioners on Grievances and Discipline of the Supreme Court.

I

**{¶ 10}** Although we decide disciplinary matters on a case-by-case basis, other similar disciplinary proceedings are helpful in determining sanctions. *Disciplinary Counsel v. Gallagher* (1998), 82 Ohio St.3d 51, 693 N.E.2d 1078. Already this year, we have disbarred an attorney for violations similar to those in the case at bar. *Columbus Bar Assn. v. James* (1999), 84 Ohio St.3d 379, 704 N.E.2d 241. Like the respondent here, the attorney disbarred in *James* exhibited a history of substance abuse, neglected his clients' interests, failed to attend scheduled court appearances, failed to cooperate in the disciplinary investigation of his misconduct, and failed to complete a voluntary drug rehabilitation program. Although the respondent in *James* also entered a guilty plea to a felony charge for cocaine possession, formal criminal charges or convictions are not a prerequisite to disbarment. *Ohio State Bar Assn. v. Weaver* (1975), 41 Ohio St.2d 97, 100, 70 O.O.2d 175, 177, 322 N.E.2d 665, 667. The court's purpose in a disciplinary

proceeding is "not to enforce the criminal code, but rather to investigate the conduct and fitness of one of its officers." *Id.*

{¶ 11} In another recent case, we disbarred an attorney who neglected legal matters, failed to rectify his client's complaints, returned a client file in disarray, billed clients for services not performed, and failed to cooperate in the disciplinary investigation of his conduct. *Cuyahoga Cty. Bar Assn. v. Clower* (1998), 84 Ohio St.3d 151, 702 N.E.2d 412. Like the respondent in the case at bar, the respondent in *Clower* also failed to answer the disciplinary complaint, and thus faced a motion for default filed by the board.

{¶ 12} Based on our precedent, we also conclude that the respondent's chemical dependency does not qualify as a mitigating factor here. In a recent disciplinary case involving a chemically dependent former judge, we noted that "[g]enerally, we do temper our decision where substance abuse is involved and the respondent has demonstrated a *commitment to sobriety*." (Emphasis added.) *Disciplinary Counsel v. Gallagher* (1998), 82 Ohio St.3d 51, 53, 693 N.E.2d 1078, 1079.

{¶ 13} In this case, respondent admitted drug use, but did not demonstrate a commitment to sobriety. Respondent here failed to contact OLAP when he initially received information about the program from Disciplinary Counsel. At the rescheduled deposition, Disciplinary Counsel reminded respondent that his failure to seek rehabilitative assistance could have serious ramifications not only for his addiction, but also for his license to practice law. Respondent refused to seek assistance. We do not view respondent's chemical dependency as a mitigating factor.

II

{¶ 14} Our decision to disbar respondent for his violations of our state's Disciplinary Rules also comports with the American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards"). American Bar Association

Center for Professional Responsibility, Standards for Imposing Lawyer Sanctions (1991 & Amend.1992), Standard 9.3, and Commentary to Standard 9.32. The ABA Joint Committee on Professional Sanctions developed the ABA Standards to alleviate some of the inconsistencies in attorney discipline that can arise both within and across jurisdictions, due to the unique factual circumstances underlying each case. *Id.,* Preface at 1. Inconsistent sanctions harm the efficacy and credibility of disciplinary systems. Sanctions that are too lenient fail to adequately deter misconduct, and sanctions that are too onerous can impair confidence in the system and deter attorneys from reporting misconduct. *Id.*

{¶ 15} The ABA Standards suggest that courts adhere to a four-step methodology when imposing sanctions for attorney misconduct. First, the court is to determine which ethical *duties* were violated by the attorney. Second, the court examines the attorney's *mental state* at the time of the violations. Third, the court assesses the extent of the *actual or potential injur*y caused by the lawyer's misconduct. Equipped with this information, the court makes an initial determination as to the appropriate sanction. Finally, in the fourth step, the court examines any *aggravating or mitigating circumstances* and arrives at a final determination. *Id.*, Theoretical Framework at 5. In Part A, below, we undertake the first three steps of the ABA Standards methodology and reach an initial determination that disbarment is the appropriate sanction in the present case. We apply step four in Part B to support our conclusion that respondent's chemical dependency does not qualify as a mitigating factor in this case.

A

{¶ 16} Under the first step of the model for sanctions, the ABA Standards ask whether the attorney violated a duty to his client, the public, the legal system, or the profession. *Id.* Respondent violated the duty of diligence that he owed to his client when he failed to file the expungement, an entrusted legal matter, in violation of DR 6-101(A)(3). Under step two of the ABA Standards*,* our review of

the record indicates that this was a knowing violation. Respondent had received phone calls from the client regarding this matter, and admitted at his deposition that he knew the expungement document was "once again lost." Respondent also admitted having confrontational conversations with Coleman, and even anticipated that she would file a complaint with the grievance board. As for injury, which constitutes step three of the ABA Standards approach, respondent's knowing violation of his duty of diligence resulted in potentially serious injury to Coleman, who was denied a residential lease on the basis of her record, and then was unable to contact respondent for redress or to obtain her file.

{¶ 17} As the following excerpt indicates, the ABA Standards recommend an initial determination of disbarment in such cases:

"Disbarment is generally appropriate when:

"(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

"(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

"(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client." Standard 4.41.

{¶ 18} The first three steps of the methodology suggested by the ABA Standards, then, support disbarring respondent for his breach of his duty to Coleman in violation of DR 6-101(A)(3). Respondent, however, also violated duties to the public (engaging in illegal conduct involving moral turpitude, DR 1-102[A][3]), the legal system (engaging in conduct adversely reflecting on the lawyer's fitness to practice law, DR 1-102[A][6]), and the profession (neglecting or refusing to assist in a disciplinary investigation, Gov.Bar R. V[4][6]), among other violations. Respondent's knowing violations of these additional duties also support the sanction of disbarment.

B

**{¶ 19}** Once we determine the sanction that respondent's *conduct* warrants, the ABA Standards suggest that the court then consider aggravating and mitigating circumstances to determine whether that sanction should be adjusted. ABA Standards, Theoretical Framework, at 6. The ABA approach is entirely consistent with this court's history of considering aggravating and mitigating factors before adopting, increasing, or decreasing the sanction recommended by the board.[1] Standard 9.0 collects the aggravating and mitigating factors into helpful lists that organize and focus what is an inherently factual determination. We note that this strategy—collecting aggravated and mitigating circumstances into manageable lists—resembles the board's recently proposed Guidelines for Imposing Lawyer Sanctions ("Ohio Guidelines"), which recite the ABA Standards' lists of aggravating and mitigating circumstances nearly verbatim. Cf. Board of Commissioners on Grievances and Discipline, Proposed Rules and Regulations Governing Procedure on Complaints and Hearings, Section 10, Guidelines for Imposing Lawyer Sanctions; ABA Standards for Imposing Lawyer Sanctions (1992 Amend.), Standards 9.2 and 9.3. At the time of writing this opinion, these Ohio Guidelines had been approved for public comment by this court.

**{¶ 20}** Chemical dependency is one of the mitigating factors recognized in both the Ohio Guidelines[2] and the ABA Standards (Standard 9.32[I]). Like the

---

1. As mitigating factors, this court has recognized, among others, cooperation with disciplinary authorities (*Bar Assn. of Greater Cleveland v. Sanders* [1986], 24 Ohio St.3d 5, 24 OBR 4, 492 N.E.2d 449); restitution (*Stark Cty. Bar Assn. v. Whitaker* [1986], 26 Ohio St.3d 1, 26 OBR 1, 496 N.E.2d 891); and remorse (*Bar Assn. of Greater Cleveland v. Sanders*, *supra*). As aggravating factors, this court has recognized, among others, failure to cooperate with disciplinary authorities (*Toledo Bar Assn. v. Wood* [1987], 32 Ohio St.3d 166, 512 N.E.2d 671); prior misconduct (*Toledo Bar Assn. v. Westmeyer* [1991], 58 Ohio St.3d 38, 567 N.E.2d 1016); and lack of candor (*Stark Cty. Bar Assn. v. Osborne* [1991], 62 Ohio St.3d 77, 578 N.E.2d 455).

2. The other seven mitigating factors listed in the Ohio Guidelines are absence of a prior disciplinary record, absence of a dishonest or selfish motive, timely good faith effort to make restitution or to rectify consequences of misconduct, full and free disclosure to disciplinary board or cooperative

ABA Standards, the Ohio Guidelines encourage the board to consider chemical dependency as a mitigating factor, but only under limited circumstances. Ohio Guidelines at Section 10(B)(7). Before the board recommends a less severe sanction on the basis of addiction, the Ohio Guidelines recommend that the board determine whether the respondent's chemical dependency satisfies a three-part threshold showing. First, the Ohio Guidelines call for a diagnosis by a qualified health care professional that the respondent is indeed chemically dependent. Second, as reflected in our case law requiring a "commitment to sobriety," the Ohio Guidelines call for the respondent to produce a certificate indicating the successful completion of an approved treatment program. Finally, the Ohio Guidelines call for a prognosis from a qualified health care professional or substance abuse counselor that the respondent will be able to return to competent, ethical, professional practice under specified conditions. *Id.*

**{¶ 21}** *If these Ohio Guidelines were applied to respondent,* the record shows that respondent would not satisfy any of the elements in the board's threshold test for consideration of chemical dependency as a mitigating factor. The record here lacks an official diagnosis of chemical dependency, a certificate of completion from a treatment program, or a prognosis of future competent practice. We do *not* suggest here that the board erred when it adopted the panel's finding of chemical dependency as a mitigating circumstance in this case, because the Ohio Guidelines had not been formally adopted at the time of the board's recommendation in this case.[3]

---

attitude toward proceedings, character or reputation, imposition of other penalties or sanctions, and other interim rehabilitation. Ohio Guidelines, at Section 10(B)(7).

3. We also note that the record supports a finding of several aggravating factors listed in the Ohio Guidelines but absent from the board and panel reports. These include the respondent's prior disciplinary offenses, a pattern of misconduct, and a lack of cooperation in the disciplinary process. As for additional mitigating factors listed in the Ohio Guidelines, we note from the record that the respondent freely disclosed his cocaine dependency at the rescheduled deposition.

**{¶ 22}** With no mitigating factors to affect the appropriate sanction of disbarment, respondent is hereby permanently disbarred from the practice of law in Ohio.  Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and F.E. SWEENEY, JJ., dissent and would order an indefinite suspension against respondent as recommended by the board.

———————————