OFFICE OF DISCIPLINARY COUNSEL *v.* EVANS.

[Cite as *Disciplinary Counsel v. Evans* (2000), 89 Ohio St.3d 497.]

(No. 00–348—Submitted May 23, 2000—Decided August 30, 2000.)

498

*Jonathan E. Coughlan,* Disciplinary Counsel, for relator.

*Don C. Iler Co., L.P.A.,* and *Don C. Iler; Buckley, King & Bluso* and *John A. Hallbauer,* for respondent.

---

**FRANCIS E. SWEENEY, SR., J.** We adopt the board's findings and conclusions that respondent violated Canon 7(B)(1), (C)(9), and (E)(1). However, after thoroughly considering the evidence in this case, we adopt the panel's recommended sanction rather than the board's recommended sanction.

When deciding what sanction to impose, we consider the duties violated, respondent's mental state, the injury caused, the existence of aggravating or mitigating circumstances, and applicable precedent. *Warren Cty. Bar Assn. v. Bunce* (1998), 81 Ohio St.3d 112, 115, 689 N.E.2d 566, 568; *Disciplinary Counsel v. Brown* (1999), 87 Ohio St.3d 316, 320, 720 N.E.2d 525, 528. With respect to the aggravating or mitigating circumstances, we are guided by the recent Amendments to the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline of the Supreme Court, Section 10, Guidelines for Imposing Lawyer Sanctions. Ohio Official Reports, June 19, 2000, Advance Sheets, xix.

One aggravating circumstance listed in Section 10 of these guidelines is the refusal to acknowledge the wrongful nature of the conduct. Section 10(B)(1)(g). Like the board, we believe that this aggravating circumstance is present here. Although respondent admitted that his misleading endorsement statements violated Canon 7(B)(1), he filed a civil lawsuit against the judges who had initiated a grievance against him based in part on the endorsements. This action was still pending at the time of the disciplinary hearing. The existence of this lawsuit contrasts with respondent's admissions that his campaign endorsements were misleading. Instead, it supports a finding that despite his stipulated admissions, respondent did not really believe that his conduct was wrong. The board was justified in finding this to be an aggravating circumstance. However, respondent now asks this court to allow him to avoid responsibility for his actions and blames his predicament on his prior counsel. He asserts that the civil suit was not instigated by him, but rather by his attorneys from the law firm of Chester, Wilcox & Saxbe, a firm, he asserts, that was disqualified from representing him due to a conflict of interest. We reject respondent's attempt to escape responsibility for the filing of the lawsuit.

Respondent, as the client, made the ultimate decision as to whether a lawsuit should be filed. In this regard, we note that respondent is not a typical client. He has been an attorney for over twenty-five years, and now serves as a judge on the Fourth District Court of Appeals. Moreover, due to his many years of

service as a Republican Party's central committee executive chairman, he is well versed in the mechanics of operating a political campaign. He is aware of, or should be aware of, the rules governing campaign advertising. Thus, we find that this after-the-fact attempt to disclaim responsibility is further proof that respondent still does not acknowledge his wrongful conduct.

We also question respondent's asserted lack of knowledge as to the source of the free labor used in the preparation of his campaign signs. The stipulations reveal that respondent knew that the labor for the signs was being provided in exchange for the lumber being donated to Guyan Township and that the signs were being constructed at the Guyan Township garage. The stipulations also reveal that respondent's good friend and neighbor, Gilliam, was put in charge of this campaign detail. Gilliam visited the work sites on several occasions and even transported workers at times. Respondent himself visited the workers at the warehouse on one occasion. Thus, it strains credibility to argue that the source of this free labor was realized only when jail inmates were actually shuttled to the jail. However, at the very least, even assuming respondent did not know that jail inmates and welfare workers prepared his signs, we find that respondent's failure to investigate the source of the free labor or supervise Gilliam's activities in the construction of the signs violated Canon 7(B)(1).

Additionally, the failure to report the free contributions once he learned of them violated Canon 7(C)(9). This canon is designed to mandate the disclosure of all contributions by judicial candidates and to make such information accessible to the public by requiring the information to be filed with the clerk of court in each county in the district. While respondent claims that he immediately halted the sign preparation as soon as he learned the source of the labor, he made no attempt to determine what he should report as contributions until he received relator's draft complaint after the general election was over. Even then, upon receiving no response to his letter to the board of elections, respondent took no further action. The responsibility of reporting contributions is respondent's, not the board of elections.

In mitigation, we note the absence of a prior disciplinary record and consider the nine letters offered in support of respondent's character and reputation. We also consider this misconduct to be isolated, arising only in the context of respondent's political campaign.

As applicable precedent, we consider other cases involving election campaign violations. See, *e.g., In re Judicial Campaign Complaint Against Hildebrandt* (1997), 82 Ohio Misc.2d 1, 675 N.E.2d 889 (inaccurate disparaging campaign statements justified a six-month stayed suspension); *In re Complaint Against Harper* (1996), 77 Ohio St.3d 211, 673 N.E.2d 1253 (a misleading disparaging television campaign advertisement justified only a public reprimand in light of

Judge Harper's many years of distinguished public service). See, also, *In re Judicial Campaign Complaint Against Burick* (1999), 95 Ohio Misc.2d 1, 705 N.E.2d 422; *In re Judicial Campaign Complaint Against Roberts* (1996), 81 Ohio Misc.2d 59, 675 N.E.2d 84 (misleading campaign advertisements concerning endorsements justified a public reprimand and/or fine).[3]

In light of the seriousness of respondent's misconduct and the aggravating circumstances, we believe that a six-month stayed suspension is an appropriate sanction. Therefore, respondent is hereby given a six-month stayed suspension. Costs taxed to respondent.

*Judgment accordingly.*

KARPINSKI, BROGAN and LUNDBERG STRATTON, JJ., concur.

RESNICK, Acting C.J., and CHRISTLEY, J., concur in part and dissent in part.

COOK, J., dissents.

JUDITH A. CHRISTLEY, J., of the Eleventh Appellate District, sitting for MOYER, C.J.

DIANE KARPINSKI, J., of the Eighth Appellate District, sitting for DOUGLAS, J.

JAMES A. BROGAN, J., of the Second Appellate District, sitting for PFEIFER, J.

---

CHRISTLEY, **J., concurring in part and dissenting in part.** While I concur in the majority's adoption of the board's findings and conclusion that the respondent violated Canon 7(B)(1), 7(C)(9), and 7(E)(1), I respectfully dissent as to the lesser sanction imposed.

The board had it right. Thus, I concur in part and dissent in part.

RESNICK, Acting C.J., concurs in the foregoing opinion.

---

COOK, **J., dissenting.** The aggravating factors present in this case warrant the sanction recommended by the board. I, therefore, respectfully dissent.

CHRISTLEY, J., concurs in the foregoing dissenting opinion.

---

3. The sanction of a fine is available in fast-track campaign-violations review cases pursuant to Gov. Jud.R. II(5)(E)(1)(c). A fine is not a permissible sanction in a regular disciplinary proceeding. Gov.Bar R. V(6)(B).