DISCIPLINARY COUNSEL *v.* SARGEANT.

[Cite as *Disciplinary Counsel v. Sargeant,*
118 Ohio St.3d 322, 2008-Ohio-2330.]

(No. 2007–2294—Submitted January 9, 2008—Decided May 20, 2008.)

Moyer, C.J.

{¶ 1} Respondent, Harry A. Sargeant Jr. of Fremont, Ohio, Attorney Registration No. 0013261, was admitted to the practice of law in Ohio in 1958. Since 1979, respondent has served as a judge of the Sandusky County Court of Common Pleas.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we publicly reprimand respondent for allowing six civil cases to languish in his court for an inordinate amount of time. We agree with the board that respondent's unjustified delay in these cases, and in other cases on his docket, violated the Code of Judicial Conduct.

## I. Procedural History

{¶ 3} Relator, Disciplinary Counsel, charged respondent with violations of Canon 3 ("A judge shall perform the duties of judicial office impartially and diligently"), Canon 3(B)(8) ("A judge shall dispose of all judicial matters promptly, efficiently, and fairly and comply with guidelines set forth in the Rules of Superintendence for the Courts of Ohio"), and Canon 3(C)(2) ("A judge shall require staff, court officials, and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge * * * "). A panel of the board considered the case against respondent on the parties' consent-to-discipline agreement. See Section 11 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The panel recommended acceptance of the agreement, which included stipulations to the cited misconduct and a joint proposal for a public reprimand. The board adopted the panel's findings of misconduct and the recommended sanction.

## II. Misconduct

### A. *Respondent Unnecessarily Delayed Proceedings in an Appeal of a Child–Support Modification Order.*

{¶ 4} On March 1, 2001, Tiffany Wehring appealed an administrative order modifying child support. Respondent held a hearing on the merits of the case in January 2002 and held what was called a "final hearing" in March. From June 2002 through October 2003, respondent also scheduled and rescheduled additional hearings to resolve a dispute over the medical bills for the child.

{¶ 5} Respondent did nothing more to dispose of Wehring's appeal for many months. Concerned about the delay, Wehring's attorney began writing letters to respondent in May 2004, inquiring about when to expect a decision in the case. Receiving no satisfactory response, Wehring's lawyer wrote four more letters to respondent, the last dated January 10, 2006, in frustrated attempts to obtain a ruling. Finally, after conducting a March 2006 pretrial proceeding to review the parties' arguments, respondent issued a two-and-one-half-page decision in Wehring's appeal on June 19, 2006.

{¶ 6} Respondent conceded that he "failed to timely take necessary action on Tiffany Wehring's appeal of the administrative child-support modification for over 51 months after the final hearing." Respondent's unnecessary and unjustified delay violated Canons 3, 3(B)(8), and 3(C)(2).

*B. Respondent Unnecessarily Delayed Proceedings in Three Divorce Cases.*

1. The First Divorce Case

{¶ 7} On September 30, 2003, Anne Burchett filed a complaint for a divorce. Respondent conducted a hearing on the merits on November 1, 2004, and over the next two weeks, the parties filed their final legal arguments. Again, respondent did nothing more to further a disposition in the divorce for more than one year.

{¶ 8} On January 11, 2006, Burchett's attorney sent respondent a letter inquiring as to the status of the case. Burchett later called respondent's office herself to determine when a final divorce decree would be issued. In late June 2006, still without a final divorce decree, Burchett filed a grievance with relator. Upon receiving notice of the grievance, respondent apologized to Burchett, and by August 10, 2006, he issued his decision and ordered Burchett's attorney to prepare the final decree.

{¶ 9} Respondent conceded that he "failed to make a decision on Burchett's divorce for 20 months after the final hearing." Respondent's unnecessary and unjustified delay violated Canons 3, 3(B)(8), and 3(C)(2).

2. The Second Divorce Case

{¶ 10} On September 7, 2004, another plaintiff filed for divorce in respondent's court. Respondent conducted the final hearing on the issue of divorce on June 13, 2005, granting the divorce and noting the possibility of foreclosure on the marital residence. Respondent scheduled and then continued further hearings on spousal and child support until, at the urging of the plaintiff's attorney, he reset the hearing for November 7, 2005.

{¶ 11} After the November 7 hearing, respondent did nothing to further a disposition in the divorce for approximately six months. Finally, on June 11,

2007, after the defendant had also urged the court to rule in the case, respondent issued a two-page decision and ordered plaintiff's attorney to prepare the final divorce decree.

{¶ 12} Respondent conceded that he "failed to issue a final decision on this case until 20 months after the final hearing" in this second divorce case. Respondent's unnecessary and unjustified delay violated Canons 3, 3(B)(8), and 3(C)(2).

3. The Third Divorce Case

{¶ 13} On June 11, 2004, a third plaintiff filed a complaint for a legal separation from her husband, and in October 2004, a magistrate for the Sandusky County Common Pleas Court ordered the defendant to pay the plaintiff $1,100 per month in temporary spousal support. On May 25, 2005, the magistrate noted in court records that a divorce had been granted and that the parties had resolved all disputes other than the issue of spousal support. The magistrate scheduled a hearing to address spousal support for June 21, 2005.

{¶ 14} Twelve months later, the magistrate still had not issued any decision as to spousal support in the plaintiff's case. In July 2006, defendant's counsel requested a rehearing, arguing a change of circumstances. The magistrate then issued a decision on August 2006, in which he granted the plaintiff $600 per month in spousal support. The plaintiff objected to the reduction, and in December 2006, the parties filed a proposed consent judgment, together asking respondent to consider the spousal-support issue de novo because so much time had passed and circumstances had changed.

{¶ 15} Respondent heard the parties' spousal-support claims on January 17, 2007. On June 13, 2007, he issued a two-page decision granting the plaintiff $1,500 per month in spousal support, effective July 1, 2007, and directing her counsel to prepare the final divorce decree. Two years had passed from the order granting the divorce.

{¶ 16} Respondent conceded that the two-year delay in this divorce case complicated the parties' lives unnecessarily. Respondent's unnecessary and unjustified delay violated Canons 3, 3(B)(8), and 3(C)(2).

*C. Respondent Unnecessarily Delayed Proceedings
in a Personal–Injury Claim.*

{¶ 17} On November 24, 2004, Danielle Tester filed a personal-injury lawsuit against Shain Dietz related to an automobile accident. Dietz filed an answer in December 2004, and by the end of March 2005, Tester had responded to Dietz's discovery requests. Respondent took no action in the case until July 10, 2006, when he conducted a pretrial hearing. The parties later settled the case.

{¶ 18} Respondent conceded that he unnecessarily delayed proceedings in Tester's personal-injury suit over 18 months. Respondent's unjustified delay violated Canons 3, 3(B)(8), and 3(C)(2).

### D. Respondent Unnecessarily Delayed Proceedings in a Workers' Compensation Appeal.

{¶ 19} On July 2, 2002, Lisa Smith challenged an administrative order in her workers' compensation claim. By the end of August 2002, both defendants had answered her complaint. Respondent conducted pretrial proceedings during 2003 and 2004.

{¶ 20} Respondent asserts that at an August 4, 2004 pretrial, he proposed a mediation conference and that one of the parties proposed mediation through the Bureau of Workers' Compensation. Almost two years passed before respondent inquired, in June 2006, as to the status of the case. Nothing had happened. In July 2006, respondent referred the case to mediation, and the parties resolved the case during that process.

{¶ 21} Respondent concedes that he failed to take necessary action in Smith's case between August 4, 2004, and June 7, 2006. Respondent states that he assumed that the parties were exploring settlement during this 22–month period and acknowledges that he failed to ascertain the parties' progress or lack thereof. Respondent's unjustified delay violated Canons 3, 3(B)(8), and 3(C)(2).

### E. Judicial Notice of Case–Management Statistics

{¶ 22} The board recommended a public reprimand based solely on the foregoing cases. However, these cases provide only isolated evidence of respondent's dilatory conduct. To obtain a clearer picture of respondent's management of the cases assigned to him, we turn to facts not presented in the underlying proceedings. Courts may take judicial notice of certain relevant facts, regardless of whether the parties request it. Evid.R. 201(C). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonabl[y] be questioned." Evid.R. 201(B).

{¶ 23} Ohio appellate, common pleas, county, and municipal courts are subject to time limits within which dispositions must be made of the cases assigned to them. Sup.R. 39(A) provides that "[t]he time limits for disposition of appellate and civil cases shall be as indicated on the Supreme Court report forms." Appendix A of the Rules of Superintendence contains the report forms for common pleas court judges and establishes time guidelines for disposition of various matters. See Sup.R. Appx. A, Forms A, B, C, and PCRP. Forms A and B provide the standards for the types of cases involved in this case: 12 months

for modification or enforcement of support orders, 18 months for divorces involving children, 12 months for divorces without children, 24 months for torts, and 12 months for workers' compensation appeals.

{¶ 24} The Rules of Superintendence require every judge on the appellate, common pleas, county, and municipal courts to file with this court case-status reports. See Sup.R. 37 and Appendix A to the Rules of Superintendence. These reports are compiled by this court's Case Management Section and can be arranged to provide both information about individual judges and comparisons between groups of judges. The statistics from the Case Management Section qualify for judicial notice as facts determined by a source whose accuracy cannot reasonably be questioned. See Evid.R. 201(B).

{¶ 25} We have reviewed respondent's caseloads and case-flow performance from 1998 through 2007, both individually and in comparison to other common pleas court judges in his county and in similar counties across the state. We focused on one specific factor in this review, the percentage of cases on respondent's docket that were pending beyond the time guidelines prescribed by this court. For this factor, a rate of 0 percent indicates that the judge is resolving all cases in his or her court within the suggested time; a rate of 10 percent or higher indicates a case-management problem. This statistic reveals that respondent frequently kept cases pending for longer than the time guidelines prescribed by the rules of superintendence and that he reported a far greater percentage of such pending cases than his peers.

{¶ 26} Respondent's failings in that regard are most apparent when one examines the contested divorce cases on his docket. In contested divorces in which the parties had children, respondent's peers had, on average, between 2 percent and 5 percent of their cases pending beyond this court's guidelines from 1998 to 2007. In 2001, respondent had 21 percent of such cases pending beyond the guidelines. From 2002 through 2005, respondent kept between 13 percent and 19 percent of those cases pending beyond the guidelines, though he reduced these numbers to 8 percent in 2006 and 3 percent in 2007. The first grievance was filed against respondent in June 2006. Similarly, for contested divorce cases without children, respondent's peers had, on average, between 4 percent and 11 percent of those cases pending beyond the guidelines from 1998 through 2007. Respondent reached a high of 43 percent in 2001, followed by 8 percent in 2002, 5 percent in 2003, 38 percent in 2004, 42 percent in 2005, 26 percent in 2006, and 6 percent in 2007.

{¶ 27} Although his conduct improved in 2006 and 2007, respondent has made a habit of keeping unacceptably high numbers of cases pending beyond this court's guidelines. This conduct plainly violated Canons 3, 3(B)(8), and 3(C)(2).

### III. Sanction

{¶ 28} In determining the appropriate sanction for respondent's violations of the Code of Judicial Conduct, we consider the duties violated, respondent's mental state, the injury caused, the existence of aggravating or mitigating circumstances, and applicable precedent. *Disciplinary Counsel v. Evans* (2000), 89 Ohio St.3d 497, 501, 733 N.E.2d 609.

#### A. Duties Violated and Injury Caused

{¶ 29} The timely resolution of cases is fundamental to the judicial system. "To none will we sell, to none will we deny, to none will we delay right or justice." Magna Carta, Clause 40, reprinted in Senate Document No. 232, 66th Cong., 2d Sess. 17. While courts inherently have the power to supervise and control their dockets (see *State ex rel. Buck v. McCabe* (1942), 140 Ohio St. 535, 537, 24 O.O. 552, 45 N.E.2d 763), this power is tempered by the responsibility to efficiently administer justice. Canon 3 of the Code of Judicial Conduct requires judges to perform their duties with impartiality and diligence, to give their judicial duties precedence over all other activities, to dispose of cases and other judicial matters "promptly, efficiently, and fairly," and to hold their staff, court officials, and others to these high standards. Canon 3, 3(A), 3(B)(8), and 3(C)(2). "Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to require that court officials, litigants and their lawyers cooperate with the judge to that end." Commentary to Canon 3(B)(8).

{¶ 30} Lengthy, unjustified delays in the disposition of a court's docket compromise the interests of parties and diminish confidence in the judiciary and the legal system. By failing to efficiently resolve the cases before him, respondent left the parties referred to above and many others in a legal limbo, often for a period of years. Respondent's conduct was inherently injurious, as it prevented timely resolution of disputes that profoundly affected the lives of those, in particular children, whose interests were before his court.

#### B. Mental State

{¶ 31} There has been no evidence presented regarding respondent's mental state, and thus we presume that he was healthy and unhindered in that regard.

#### C. Aggravating and Mitigating Circumstances

{¶ 32} We weigh the aggravating and mitigating factors in order to impose a sanction that is appropriate for the circumstances presented. No aggravating factors were identified in the parties' stipulation. In mitigation, the parties stipulated that respondent has no prior disciplinary record, cooperated completely in the investigation of the grievances against him, and provided persuasive

testimonials to his good character and reputation. BCGD Proc.Reg. 10(B)(2)(a), (d), and (e). The parties also stipulated that respondent has hired a law clerk to help him better manage his docket, including preparing monthly status reports on all pending cases and drafting opinions more expeditiously.

### D. Applicable precedent

{¶ 33} This case is unique. This court has not previously been presented with a recommendation that we sanction a judge solely for the judge's failure to manage his or her docket pursuant to the deadlines provided in the Rules of Superintendence. We have found violations of Canon 3(B)(8) of the Code of Judicial Conduct in particular in several disciplinary cases, but the sanctions have always been in response to those violations in combination with several other violations of the Code. See, e.g., *Disciplinary Counsel v. Squire*, 116 Ohio St.3d 110, 2007-Ohio-5588, 876 N.E.2d 933, ¶ 112 (suspending a former judge for two years with 12 months stayed for numerous violations of the Code of Judicial Conduct, including Canon 3(B)(8), and the Code of Professional Responsibility); *Disciplinary Counsel v. Medley*, 104 Ohio St.3d 251, 2004-Ohio-6402, 819 N.E.2d 273, ¶ 43 (suspending a judge for 18 months with six months stayed for numerous violations); *Disciplinary Counsel v. Karto* (2002), 94 Ohio St.3d 109, 117, 760 N.E.2d 412 (suspending a judge for six months for numerous violations). However, the fact that there is no precedent for these particular circumstances does not diminish the problems caused by respondent's conduct.

### E. Determination

{¶ 34} Parties rightfully expect to receive prompt, efficient, and fair resolutions of their cases. Judges must meet these expectations impartially and diligently. By failing to manage his docket, respondent injured the parties before him and the public's perception of the legal system.

{¶ 35} Nevertheless, we recognize that this case is one of first impression, as it is the only disciplinary case we have encountered that involves only docket control. We also consider the following facts in determining an appropriate sanction: (1) respondent's term of office ends in December 2008, (2) in 2006 and 2007, respondent reduced the number of cases pending beyond this court's guidelines, (3) respondent hired a law clerk to assist him, (4) respondent has no prior disciplinary record, (5) respondent fully cooperated in the disciplinary proceedings, and (6) respondent presented evidence of his good character.

{¶ 36} Given the strength of those mitigating factors that are unique to this case, we accept the recommended sanction and hereby publicly reprimand respondent for his violations of Canons 3, 3(B)(8), and 3(C)(2). Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

LUNDBERG STRATTON, J., dissents.

---

**LUNDBERG STRATTON, J., dissenting.**

{¶ 37} Today this court issues a public reprimand to the respondent. Because I believe that the respondent, regardless of his status as a judge, engaged in a persistent pattern of neglect, I would remand the matter to the board for a hearing pursuant to Gov.Bar R. V(8)(D). Therefore, I respectfully dissent.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

Charles J. Kettlewell, for respondent.

