**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Ohio State Bar Assn. v. McCafferty,* **Slip Opinion No. 2014-Ohio-3075.]**

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3075

OHIO STATE BAR ASSOCIATION *v*. MCCAFFERTY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio State Bar Assn. v. McCafferty,* Slip Opinion No. 2014-Ohio-3075.]**

*Judges—Misconduct—Felony convictions—Lying to FBI agents—Conduct prejudicial to administration of justice—Conduct adversely reflecting on fitness to practice law—Violation of rules of Code of Judicial Conduct, including those prohibiting noncompliance with law and abuse of prestige of office—Indefinite suspension imposed, without credit for time served under interim felony suspension, to begin when term of federal supervised release is completed.*

(No. 2013-0939—Submitted August 21, 2013—Decided July 17, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2012-056.

_____

**O'NEILL, J**.

{¶ 1} Respondent, Bridget Marie McCafferty of Westlake, Ohio, Attorney Registration No. 0055367, was admitted to the practice of law in Ohio in 1991. Prior to this, McCafferty had no disciplinary history.

{¶ 2} McCafferty served as a judge on the Cuyahoga County Court of Common Pleas from January 11, 1999, until September 15, 2010, when she was arrested. In February 2011, McCafferty was indicted by a federal grand jury on multiple counts of making false statements to the Federal Bureau of Investigation in violation of 18 U.S.C. 1001. In August of that year, a jury found McCafferty guilty on all counts.

{¶ 3} On September 14, 2011, we imposed an interim suspension on McCafferty's license to practice law based on her conviction. *In re McCafferty,* 129 Ohio St.3d 1467, 2011-Ohio-4605, 953 N.E.2d 334. On August 6, 2012, the Ohio State Bar Association, relator, filed a complaint with the Board of Commissioners on Grievances and Discipline against McCafferty, requesting that McCafferty be disciplined.

{¶ 4} On January 23, 2013, a three-member panel of the board held a hearing. The parties stipulated that McCafferty's convictions constituted certain rule violations. In accordance with this stipulation, the panel found that McCafferty's conduct violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). The panel further found that McCafferty violated Jud.Cond.R. 1.1 (a judge shall comply with the law), 1.2 (a judge shall act in a manner that promotes public confidence in the independence, integrity,

and impartiality of the judiciary), 1.3 (a judge shall not abuse the prestige of judicial office to advance the personal or economic interests of the judge or others), and 2.4(B) (a judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment). The panel recommended that McCafferty be indefinitely suspended from the practice of law with no credit for time served under the 2011 interim felony suspension.

{¶ 5} On June 6, 2013, the board adopted the findings of fact, conclusions of law, and recommendation of the panel and recommended that McCafferty be suspended indefinitely from the practice of law in Ohio with no credit for time served, with costs taxed to McCafferty.

{¶ 6} We adopt the board's findings of fact, misconduct, and recommended sanction. We find that an indefinite suspension from the practice of law with no credit for time served during the felony suspension is the appropriate sanction in this case.

## Misconduct

{¶ 7} In the summer of 2007, the FBI formally opened an investigation based on allegations of widespread corruption among public officials and public employees in and around Cuyahoga County. The primary focus of the investigation was on Cuyahoga County Commissioner James Dimora and Cuyahoga County Auditor Frank Russo. The FBI intercepted some 44,000 telephone conversations between various public officials and private citizens in furtherance of the investigation. These calls included conversations between McCafferty, Frank Russo, and others in which she revealed that she had used or intended to use her influence in cases in her courtroom to advance the interests of Russo and Dimora and to get more favorable settlement terms for local businessman Steve Pumper. This misuse of her judicial position was not charged in the criminal complaint and is not part of the instant case.

**{¶ 8}** On September 23, 2008, FBI Agents Oliver and Curtis pulled into McCafferty's driveway unannounced as she was taking her garbage cans to her garage. They asked if they could talk to her about the Cuyahoga County corruption investigation. McCafferty agreed and invited them inside to sit at her kitchen table.

**{¶ 9}** The agents asked McCafferty numerous questions about Dimora, Russo, and Pumper. McCafferty denied that Dimora had ever attempted to influence or intervene in any cases before her court. She also denied that Dimora had any involvement in any cases before her court. When questioned about Russo, McCafferty told the federal agents that she had never spoken to Russo about any of her cases. And when asked about Steve Pumper, McCafferty denied ever attempting to sway settlement negotiations for Pumper. And she denied ever telling Pumper that she had tried to settle his case for less money.

**{¶ 10}** The agents stopped the interview and told McCafferty that they knew she was being dishonest. They warned her that lying to federal agents was a federal crime. They even told her about the wiretapped conversations and offered, multiple times, to play the tapes for her. McCafferty repeatedly refused to listen to the recordings.

**{¶ 11}** McCafferty was indicted, tried, and convicted on ten counts of violating 18 U.S.C. 1001, making false statements to federal law enforcement. In sentencing McCafferty, the trial court merged the counts, reducing the number to four. The court applied an upward variance from a standard sentence due to the fact that McCafferty was a sitting judge at the time she committed her crimes. McCafferty received the maximum sentence of 14 months in prison, with three years of supervised release. She was also ordered to serve 150 hours of community service and pay a fine of $400.

**{¶ 12}** On September 13, 2011, McCafferty reported to Federal Prison Camp Alderson in West Virginia. She completed her prison term with good-time

credit, and on September 17, 2012, she began serving three years of probation in accordance with her sentence. She has completed her community-service requirement and paid her fine and has no requirements left on her probation other than filing a monthly report with her probation officer. Barring a parole violation, McCafferty will complete her term of supervised release on September 17, 2015.

{¶ 13} The day after her incarceration, we imposed the interim felony suspension, and 11 months later, the complaint now before us was filed. A panel of the board held a hearing in January 2013. The parties stipulated to the following: (1) Pursuant to Gov.Bar R. V(5)(B), McCafferty's federal conviction of four counts of providing false statements "constitute[s] conclusive evidence that she engaged in the charged acts and conduct," (2) McCafferty's actions constitute a violation of Prof.Cond.R. 8.4(b), (c), (d), and (h), and (3) McCafferty's actions constitute a violation of Jud.Cond.R. 1.1 and 1.2.

{¶ 14} McCafferty disputed that her conduct violated Jud.Cond.R. 1.3 and 2.4. Jud.Cond.R. 1.3 provides, "A judge shall not abuse the prestige of judicial office to advance the personal or economic interests of the judge or others, or allow others to do so." Jud.Cond.R. 2.4(B) and (C) provide, "A judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment," and a judge "shall not convey or permit others to convey the impression that any person or organization is in a position to influence the judge." The board, however, found that McCafferty had violated these rules. The board concluded that McCafferty's false statements to the FBI about Russo's and Dimora's attempts to influence her judicial conduct were attempts to make herself appear less susceptible to such influence than she actually was and that through those false statements, she abused the prestige of her office to advance her personal interest and the interests of Russo and Dimora. We agree. Thus, we adopt the board's findings of fact and conclusions of law regarding McCafferty's misconduct.

5

**Sanction**

**{¶ 15}** When determining the appropriate sanction to impose on McCafferty for her violations of the Ohio Rules of Professional Conduct and the Ohio Code of Judicial Conduct, we consider the duties violated, respondent's mental state, the injury caused, the existence of aggravating or mitigating factors, and applicable precedent. *Disciplinary Counsel v. O'Neill,* 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 45; *Disciplinary Counsel v. Kaup,* 102 Ohio St.3d 29, 2004-Ohio-1525, 806 N.E.2d 513, ¶ 11; *Disciplinary Counsel v. Evans*, 89 Ohio St.3d 497, 501, 733 N.E.2d 609 (2000). McCafferty has not offered evidence of any medical disability or chemical dependency that contributed to her ethical violations. Thus, we presume that she was healthy and unhindered at the time. *Disciplinary Counsel v. Hoskins,* 119 Ohio St.3d 17, 2008-Ohio-3194, 891 N.E.2d 324, at ¶ 84, citing *Disciplinary Counsel v. Sargent,* 118 Ohio St.3d 322, 2008-Ohio-2330, 889 N.E.2d 96, ¶ 31.

**{¶ 16}** This court has stated that judges are held to the highest possible standard of ethical conduct. *Mahoning Cty. Bar Assn. v. Franko,* 168 Ohio St. 17, 23, 151 N.E.2d 17 (1958); *Hoskins* at ¶ 42. Canon 1 of the Ohio Code of Judicial Conduct states that a judge "shall uphold and promote the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." As the board correctly observed, a judge's violation of these duties can undermine public confidence in the judiciary, particularly when the violation constitutes a felony, *Disciplinary Counsel v. Gallagher,* 82 Ohio St.3d 51, 53, 693 N.E.2d 1078 (1998) ("When a judge's felonious conduct brings disrepute to the judicial system, the institution is irreparably harmed"). By her own admission, McCafferty violated duties imposed upon her by the Code of Judicial Conduct and the Rules of Professional Conduct. The most basic of those duties is to adhere to the law at all times without fail. McCafferty thus had the duty to be truthful with the FBI without regard to the outcome for herself, Russo,

Dimora, or others. Her failure to cooperate with the FBI resulted in prolonging a federal investigation, and McCafferty's conviction undermined public confidence in the judiciary.

**{¶ 17}** In aggravation, the parties have stipulated and the board has found that McCafferty's conviction arose from conduct that involved dishonesty. BCGD Proc.Reg. 10(B)(1). We agree. We further observe that McCafferty's insistence that she subjectively believed that she was telling the truth to the FBI agents, despite the fact that there are recordings of telephone calls demonstrating that she was not telling the truth, is an aggravating factor in this case. BCGD Proc.Reg. 10(B)(1)(g).

**{¶ 18}** In mitigation, the board found the following factors: McCafferty had no prior disciplinary record, she displayed a cooperative attitude during the disciplinary proceedings, she submitted many letters attesting to her good character and reputation, she had a record of extensive community service, and she had suffered prior penalties for this misconduct, such as the loss of her judgeship, incarceration, a fine, court-ordered community service, and supervised release. BCGD Proc.Reg. 10(B)(2)(a), (d), (e), and (f). We agree. We further observe that McCafferty has made a timely good-faith effort to rectify the consequences of her misconduct. Examples of this include McCafferty's prompt completion of the 150 hours of community service imposed as a result of her conviction, prompt payment of her monetary penalty, and her efforts in tutoring women in prison to help them to obtain a GED. BCGD Proc.Reg. 10(B)(2)(c).

*Applicable precedent*

**{¶ 19}** The relator has maintained that permanent disbarment is the appropriate sanction, and the case law supporting disbarment is clear. McCafferty has requested a fixed suspension of 24 months. The board has recommended an indefinite suspension with no credit for the time served under the interim felony suspension imposed in September 2011.

{¶ 20} This court affirms its position that " 'judges are held to higher standards of integrity and ethical conduct than attorneys or other persons not invested with the public trust.' " *O'Neill,* 103 Ohio St.3d 204, 2004-Ohio-4704, 814 N.E.2d 286, ¶ 57, quoting Shaman, Lubet & Alfini, *Judicial Conduct and Ethics* 2 (3d Ed.2000). The primary purposes of judicial discipline are to protect the public, guarantee the evenhanded administration of justice, and to bolster public confidence in the institution. *Id.* at ¶ 33, citing *Kloepfer v. Comm. on Judicial Performance*, 49 Cal.3d 826, 864-865, 264 Cal.Rptr. 100, 782 P.2d 239 (1989).

{¶ 21} We recognize the board's observation, at relator's urging, that this court has found disbarment to be an appropriate sanction for a judge who has been convicted of a felony. *Gallagher,* 82 Ohio St.3d 51, 693 N.E.2d 1078 (judge disbarred after federal conviction for distributing cocaine); *Disciplinary Counsel v. McAuliffe,* 121 Ohio St.3d 315, 2009-Ohio-1151, 903 N.E.2d 1209 (judge disbarred after being convicted of multiple federal offenses for burning down his house to defraud an insurance company). And this court has disbarred judges for dishonest conduct that has not resulted in a felony conviction. *Hoskins,* 119 Ohio St.3d 17, 2008-Ohio-3194, 891 N.E.2d 324 (judge disbarred for multiple violations involving serious deceit and misrepresentation).

{¶ 22} We also recognize that this court has not always permanently disbarred a judge for dishonest conduct. *Evans,* 89 Ohio St.3d 497, 733 N.E.2d 609 (six-month stayed suspension for judge who, as judicial candidate, used township property and the labor of inmates and welfare recipients that he did not pay for or disclose). Even when the misconduct results in a felony conviction, disbarment is not inevitable. *Disciplinary Counsel v. Crane,* 56 Ohio St.3d 38, 564 N.E.2d 96 (1990) (indefinite suspension with no credit for time served for judge convicted of federal tax evasion and filing a false return). And this court has said, " '[P]roof of a criminal conviction is generally not conclusive of the

issue of moral turpitude, which required consideration of all the circumstances surrounding the illegal conduct.' " *McAuliffe* at ¶ 24, quoting *Disciplinary Counsel v. Burkhart*, 75 Ohio St.3d 188, 191, 661 N.E.2d 1062 (1996).

{¶ 23} We agree with the board that the circumstances in this case can be distinguished from *Gallagher, McAuliffe,* and *Hoskins,* in which judges were permanently disbarred. In those cases, the judges had engaged in criminal conduct over a period of time, from a few days to months, and the misconduct was preplanned.

{¶ 24} Certainly McCafferty's conduct warrants a severe sanction. She was convicted on multiple counts of lying to FBI agents about conversations with people who were the subject of a county-wide corruption investigation. In addition, McCafferty was deceptive about the nature of those conversations, most particularly that those conversations included matters that had been before her in court. Notwithstanding, the conduct that led to the criminal convictions and rule violations occurred during a single impromptu conversation with FBI agents, rather than as a pattern of premeditated criminal conduct. Thus, we agree with the board that imposition of the system's most severe sanction is not warranted in this case.

{¶ 25} But we also do not believe that the appropriate sanction is a fixed-term suspension. Despite McCafferty's cooperative attitude during the disciplinary proceedings, we are troubled by the contradiction between McCafferty's assertion that she accepts full responsibility for her actions and her statement that she believed that she had answered the agents' questions as truthfully as she could. She clings to this claim, despite its utter implausibility in the face of the recorded conversations. Thus, we determine that an indefinite suspension without credit for time served is the appropriate sanction for her misconduct.

**Conclusion**

{¶ 26} Accordingly, Bridget Marie McCafferty is indefinitely suspended from the practice of law in Ohio with no credit for any period of earlier suspension. Her interim felony suspension continues until she completes all terms of her federal supervised release and has been discharged by the federal district court, and this indefinite suspension will begin at that time. Costs are taxed to McCafferty.

Judgment accordingly.

PFEIFER, O'DONNELL, and KENNEDY, JJ., concur.

O'CONNOR, C.J., and LANZINGER and FRENCH, JJ., dissent.

_____

**LANZINGER, J., dissenting.**

{¶ 27} I do not see how the majority can square a sanction of a mere indefinite suspension with its statements that "[t]his court has stated that judges are held to the highest possible standard of ethical conduct," majority opinion at ¶ 16, citing *Mahoning Cty. Bar Assn. v. Franko,* 168 Ohio St. 17, 23, 151 N.E.2d 17 (1958), and *Disciplinary Counsel v. Hoskins*, 119 Ohio St.3d 17, 2008-Ohio-3194, 891 N.E.2d 324, ¶ 42, and that " ' "judges are held to higher standards of integrity and ethical conduct than attorneys or other persons not invested with the public trust," ' " majority opinion at ¶ 20, quoting *Disciplinary Counsel v. O'Neill,* 103 Ohio St.3d 204, 2004-Ohio-4704, 814 N.E.2d 286, ¶ 57, quoting Shaman, Lubet & Alfini, *Judicial Conduct and Ethics* 2 (3d Ed.2000).

{¶ 28} I disagree that Bridget McCafferty's case should be distinguished from other cases in which a judge has been disbarred. She has been convicted of a felony, as were the judges in *Disciplinary Counsel v. Mosely,* 69 Ohio St.3d 401, 632 N.E.2d 1287 (1994); *Disciplinary Counsel v. Gallagher,* 82 Ohio St.3d 51, 693 N.E.2d 1078 (1998); *Disciplinary Counsel v. McAuliffe,* 121 Ohio St.3d 315, 2009-Ohio-1151, 903 N.E.2d 1209.

10

{¶ 29} We are to consider all the circumstances surrounding her conduct in determining what sanction should be imposed for these disciplinary violations. See BCGD Proc.Reg. 10(B); *Hoskins* at ¶ 79. McCafferty was convicted on multiple counts of lying to FBI agents about conversations with people who were the subject of a county-wide corruption investigation. Those conversations, which the FBI intercepted, revealed that she had used or intended to use her influence in cases in her courtroom to advance the interests of Frank Russo, Jimmy Dimora, and a local businessman. This misconduct strikes at the very heart of the judiciary.

{¶ 30} And it is not conduct that we can ignore, as the majority opinion attempts to do. The majority focuses solely on McCafferty's conversation with FBI agents and paints her conduct as a one-time, brief lapse in judgment. This narrow characterization is simply untrue; McCafferty's misconduct was more prolonged and more egregious than the majority admits. Months before she ever spoke to the FBI, McCafferty was swaying judicial outcomes for political associates and giving special consideration to high-ranking politicians. There can be no dispute that this conduct occurred. McCafferty's criminal indictment outlined her involvement with Dimora and Russo, and she stipulated, at her disciplinary hearing, to engaging in the conduct described in the indictment. Even without this clear stipulation, her convictions alone would still establish an irrebuttable presumption that this particular misconduct occurred. *See* Gov.Bar R. V(5)(B). We must therefore presume that she grossly abused her judicial position for political favor.

{¶ 31} There can also be no dispute that this misconduct is part of the case before us. The disciplinary complaint specifically charged McCafferty with violations of Jud.Cond.R. 1.3 ("A judge shall not abuse the prestige of judicial office to advance the personal or economic interests of the judge or others, or allow others to do so") and Jud.Cond.R. 2.4 ("A judge shall not permit family,

social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment"). Both of these rule violations relate to her abuse of office and her involvement with Russo and Dimora. It therefore makes no sense for the majority to claim that McCafferty's misuse of her position is "not a part of the instant case." Majority opinion at ¶ 7. If it formed the basis for her rule violations—violations which the majority upholds—then it is clearly part of this case and we must consider it in imposing our sanction.

{¶ 32} We have stated that "[w]hen a judge's felonious conduct brings disrepute to the judicial system, the institution is irreparably harmed," and the judge deserves "the full measure of our disciplinary authority." *Gallagher*, 82 Ohio St.3d at 53, 693 N.E.2d 1078. If the primary purposes of judicial discipline are to protect the public, guarantee the evenhanded administration of justice, and to bolster public confidence in the institution, then nothing short of disbarment should be imposed in this case.

O'CONNOR, C.J., and FRENCH, J., concur in the foregoing opinion.

———————————

Douglas N. Godshall, Eugene P. Whetzel, and Joseph S. Kodish, for relator.

Montgomery, Rennie & Jonson, George D. Jonson, and Kimberly Vanover Riley, for respondent.

———————————